**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────────

**SONIA DOTSON,**

                    **Plaintiff,**

            **vs.**                                        **5:04-CV-1388**
                                                          **(NAM/GJD)**

**THE CITY OF SYRACUSE, THE CITY OF**
**SYRACUSE POLICE DEPARTMENT,**
**FORMER CHIEF OF POLICE DENNIS DUVAL,**
**SGT. TIMOTHY GAY, MARK McCARDLE,**
**PATRICK HARRINGTON, MICHAEL RATHBUN,**

                    **Defendants.**

─────────────────────────────────

**APPEARANCES:**                              **OF COUNSEL:**

Bosman Law Office                             A.J. Bosman, Esq.
258 E. Genesee Street
Utica, New York 13502
*Attorney for Plaintiff*

City of Syracuse Corporation Counsel          Rory A. McMahon, Esq.
300 City Hall                                 Joseph Francis Bergh, Esq.
Syracuse, New York 13202
*Attorneys for Defendants*

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

        Plaintiff Sonia Dotson, a Hispanic female, alleges that defendants discriminated against

her based on her race and gender in violation of 42 U.S.C. § 2000e *et seq*. ("Title VII");  42

U.S.C. §§ 1981 and 1983; and the N.Y. Exec. Law § 296 ("New York Human Rights Law" or

"NYHRL").  Presently before the Court is defendants' motion (Dkt. No. 41) pursuant to Fed. R.

Civ. P. 56(c) seeking summary judgment and dismissal of plaintiff's amended complaint.[1]  The

first cause of action alleges that defendants engaged in discriminatory acts and had discriminatory

policies, which include treating women as second class citizens, excluding women from certain

assignments and positions of visibility, authority, and power in violation of Title VII.  Plaintiff

claims that defendants also subjected minorities and women to stricter guidelines regarding sick

time, performance evaluations, promotions, and assignments, in violation of Title VII.

The second cause of action, also pursuant to Title VII, alleges: "[t]he defendants Sgt.

Timothy Gay and Patrick Harrington and others have created and/or perpetrated a hostile work

environment and subjected [w]omen to discriminatory and disparate treatment."

The third cause of action, also pursuant to Title VII, alleges:

> The plaintiff was subjected to retaliation for complaints of discrimination and a
> hostile work environment.  Defendant Sgt. Gay stopped speaking to the plaintiff at
> her workplace and called her sexually offensive names to other persons at the
> workplace. The defendants also subjected the plaintiff to retaliatory criticism and
> abuse of power and authority, including, eavesdropping on plaintiff's telephone
> conversations, finding fault, issuing counseling memoranda, "Notification," and
> criticizing plaintiff's use of sick time or work performance.

The fourth and fifth causes of action allege violations of 42 U.S.C. §§ 1981 and 1983.

Plaintiff alleges that defendants violated plaintiff's rights under the First and Fourteenth

Amendments by depriving her "of equal protection under her contract" and subjecting her to

"retaliation and punishment for seeking redress of grievances".  Plaintiff also alleges that

defendants "disparate treatment of women and minorities was so pervasive and widespread that it

---

[1] In a prior Memorandum-Decision and Order dated March 21, 2006, the Court granted defendants' motion
to dismiss portions of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and directed plaintiff to replead and
file an amended complaint on or before April 5, 2006.  *See Dotson v. The City of Syracuse*, 04-CV-1388, Dkt. No.
22 (March 21, 2006) (Memorandum-Decision and Order).  The amended complaint asserts causes of action against
"The City of Syracuse Police Department".  However, in the prior Memorandum Decision-Order, this Court granted
defendants' motion to dismiss the City of Syracuse Police Department from this action.

had the effect of a custom and the defendant Duval had final policymaking authority in which he

failed to enforce the laws prohibiting such discriminatory treatment".

 The sixth cause of action alleges that defendants violated the New York Human Rights

Law based upon the conduct alleged in the complaint.[2]

## FACTUAL BACKGROUND[3]

 The facts, unless otherwise noted, are undisputed.[4]  On August 29, 2000, plaintiff was

appointed to the position of Community Service Officer ("CSO") in the City of Syracuse Police

Department ("SPD"), effective August 31, 2000.  Plaintiff was initially assigned to the Third

---

[2] The amended complaint also contains a seventh, eighth and ninth cause of action which advance state law claims based upon breach of contract, intentional infliction of emotional stress and mental anxiety, negligence and gross negligence.  However, these causes of action were previously dismissed in the Court's prior Memorandum Decision-Order without leave to amend or replead.

[3] Defendants properly filed a Statement of Material Facts pursuant to Local Rule 7.1.  Plaintiff responded to defendants' Local Rule 7.1 Statement of Material Facts, but did so incorrectly.  In some responses, plaintiff failed to admit or deny each factual statement made by defendants as required by Local Rule 7.1.  Moreover, plaintiff failed to set forth specific citations to the record.  Although the Court will not strike Plaintiff's Response to Defendants' Statement of Material Facts as defendants request, to the extent plaintiff's responses violate Local Rule 7.1, and are not properly admitted or denied, the Court will deem defendants' statement of fact admitted by plaintiff. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that a district court has broad discretion to determine whether to overlook a party's failure to comply with local rules).  Local Rule 7.1(a)(3) states:

> The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute.  <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Local Rule 7.1(a)(3)(emphasis in original).

[4] The facts set forth in this section are taken from: (1) the Amended Complaint; (2) the Answer; (3) Defendants' Statement of Material Facts; (4) Plaintiff's Response to Defendants' Statement of Material Facts; (5) the exhibits and evidence submitted by Defendants in support of their Motion for Summary Judgment; and (6) the exhibits and evidence submitted by Plaintiff in Opposition to Defendants' Motion for Summary Judgment.  The facts, as discussed herein, are for the relevant time period as referenced in the amended complaint.

Platoon and was supervised by Sergeant Rutha Chikowi ("Chikowi").[5]  In 2001, plaintiff was transferred to the Patrol Division, Second Platoon.  Upon being transferred, plaintiff's working hours were 5:30 a.m. until 1:30 p.m.

From July 11, 2001 until September 2, 2004, defendant Dennis Duval ("Duval") was the Chief of the SPD.  From February 2003 until July 2003, defendant Timothy Gay ("Gay"), a Sergeant of the SPD, was plaintiff's supervisor.  From 2002 until 2003, defendants Mark McCardle ("McArdle")[6] and Michael Rathbun ("Rathbun") were Captains of the SPD assigned to the Patrol Bureau.  Defendant Patrick Harrington ("Harrington") was a CSO with the SPD and, at the relevant time, was assigned to the front desk with plaintiff.

Within the SPD, a CSO is a civil service position with no promotional opportunities.  The responsibilities of a CSO included performing desk duty in various divisions in the SPD, answering telephone calls from the public, entering data into a computer and working on the road (including serving as crossing guards at school crosswalks).  CSOs did not carry firearms and could not make arrests.  On occasion, CSOs were required to work beyond the end of their scheduled shifts.  As a CSO, plaintiff was a member of Civil Service Employees Association, Inc. ("CSEA"), Local 1000 AFSCME/AFL-CIO, City of Syracuse Unit 7801-00, Onondaga Local 834.  CSEA entered into a Labor Agreement with the City of Syracuse.  The salary for a CSO was set by the Labor Agreement and increased based upon the number of years of employment.  The Labor Agreement contained provisions regarding sick/medical leave.  The relevant portions of the

---

[5] Sgt. Chikowi is not a defendant in this action.  The record contains no information regarding the Sergeant's duties or responsibilities.

[6] Defendant McArdle's name is misspelled in the caption.  According to the deposition transcript, the correct spelling is McArdle.

Labor Agreement provided:

Section 13.1 Sick Leave

A. An employee contracting or incurring any non-service connected sickness of disability which renders such employee unable to perform the duties of his/her employment shall be eligible for sick leave.

B. Employees shall earn sick leave at the rate of 1 1/4 days per month. An employee who is on sick leave for the entire month does not earn any additional sick leave credits.

1. New employees hired after February 8, 1993 shall accrue sick leave from date of hire but shall not be eligible for sick leave usage until they have completed 52 weeks of continuous service.

C. The City, at its option, may require a doctor's certificate after an employee is absent from work four consecutive days or any six non-consecutive days within one calendar year.

<u>Pornography Issue</u>

On two occasions, between March 2003 and August 2003, plaintiff observed Harrington and Gay viewing pornography on Harrington's laptop computer in the patrol area. Plaintiff testified that the first time it occurred, she saw Harrington viewing still photographs of naked women on his laptop without audio. Plaintiff stated that she had to walk behind Harrington to see what he was viewing on his laptop. The second incident involved Harrington and Gay. Plaintiff testified that Gay positioned the laptop facing out towards everyone. Gay was viewing a pornographic movie with very low audio. Plaintiff claimed that she told Gay that the movie, "was disgusting". While viewing the pornography, plaintiff claimed that certain individuals made comments about the movies which included explicit language. Plaintiff never complained to the individuals or asked them to stop. On those two occasions, no other sergeants, lieutenants, captains, inspectors and/or deputy chiefs were present. Plaintiff never brought the issue of

pornography to the attention of Duval or the commanding officer of the platoon, McArdle.[7]

Plaintiff also claimed that Harrington brought pornography magazines and catalogs to the office.  Plaintiff did not make any complaints about the magazines and claims she threw them out.  Plaintiff also allegedly heard CSOs and police officers make derogatory comments about women but could not recall who made those comments.

Sick Leave Issue

On September 11, 2003, plaintiff was injured in a motor vehicle accident while on duty.  As a result of her injury, plaintiff was absent from work on September 12, 2003 and September 13, 2003.   While plaintiff was at home, Lieutenant Thomas Serrao ("Serrao") called her to discuss her sick time.[8]  On the motion, Bureau Chief Michael Heenan ("Heenan") provided an affidavit.[9]  According to Heenan, plaintiff was asked to provide a doctor's note for the September 13th absence and to complete an Inter-Departmental Memo outlining that she understood the SPD policy regarding the use of sick time.[10]  On September 16, 2003, plaintiff prepared an Inter-Departmental Memo regarding her absence on September 12th and 13th.  In the memo, addressed to Serrao, plaintiff stated that she understood that she needed a doctor's excuse for the time.  Plaintiff placed the memo on Gay's desk and stated, "that's all you're gonna get".

On September 27, 2003, after plaintiff refused to correct her Inter-Departmental Memo to

---

[7] McArdle testified that plaintiff was not under his "direct supervision" but rather, "[s]he was a CSO, so she was directed by a sergeant, in turn by a lieutenant, and then by me".

[8] The record does not contain any information with regard to Lt. Serrao other than plaintiff's testimony that he was a "supervisor".

[9] From 2001 until 2005, Heenan as Deputy Chief of Police in charge of the Patrol Division.  At the time the within motion was filed, Heenan was First Deputy Chief of Police.

[10] Throughout the record, the notation "10.1" is used synonymously with "Inter-Departmental Memo".

6

state that she understood the departmental policy concerning the use of sick time, McArdle

drafted several Disciplinary Action Reports charging plaintiff with insubordination.  On October

2, 2003, Heenan prepared an Inter-Departmental Memo for Duval regarding disciplinary action

against plaintiff.  In the memorandum, Heenan stated that, "the only valid charges are those that

involve the failure of CSO Dotson to properly complete the memo regarding her understanding of

the proper procedures for calling in sick, and her refusal to correct that memo upon being advised

of its insuffiencty [sic] by Sgt. Gay".  Heenan recommended that plaintiff receive a 3 day

suspension for her conduct.  Duval did not act on the recommendations and plaintiff was not

disciplined.          On September 23, 2003, Lieutenant Judy Culeton, the Commanding

Officer for the Human Resources Division ("Culeton"), sent an Inter-Departmental-Memo to

plaintiff regarding Medical Leave Usage.  On this motion, Culeton provided an affidavit and

stated that the Memorandum was issued to "almost all CSOs".  The memorandum stated, in

pertinent part:

> Personnel records indicate that you have been absent on medical leave for more than
> six non-consecutive days in calendar year 2003.  Therefore, you are ordered to
> supply a doctor's certificate indicating you were not able to work and the reason
> why, for each absence on medical leave for the remainder of this year, following the
> date you are served with this notice; this includes partial days absent due to medical
> leave.
>
> . . . Failure to provide said doctor's certificate immediately upon return to work will
> result in delinquency action being initiated for failure to obey this order.

Plaintiff's First Complaint to EEO Officer

On September 23, 2003, plaintiff submitted two Inter-Departmental-Memos to Lieutenant

Rebecca Thompson ("Thompson") at the SPD Equal Employment Office ("EEO").  Plaintiff

stated:

Earlier in the year, 2003, I was placed on light duty due to an off duty injury. During this period I was subjected to behavior, on 3 or 4 separate occasions, at the front desk that made me very uncomfortable. On weekends, when the front desk wasn't as busy as through the week and commanding officers weren't as likely to show up at the desk, C.S.O. Pat Harrington would bring in his laptop and watch pornographic movies on it in plain view. What was more disturbing was that the desk Sgt. that was on, Sgt. Tim Gay, would not reprimand him on his behavior but instead would watch the movies right along with him.

Harrington and Gay would make comments on the females body parts and what was taking place in the movies. I did not engage in this act with them, but would turn around and face away from the laptop. I commented that it was disgusting but did not say anything further. I felt as though there was a supervisor there and it was his job not to let that go on. This act made me feel very uncomfortable and disrespected and for that reason I would like action taken to see that this would not happen again.

Plaintiff stated that the incidents occurred between March 2003 and June 2003, however, plaintiff could not recall the exact dates.[11]   Plaintiff also stated that no one else was assigned to the desk during the incidents.

Response to Plaintiff's First Complaint

On this motion, Thompson provided an affidavit.  Thompson stated that on September 24, 2003, she met with McArdle and was advised that Gay was not on duty until September 26, 2003 and Harrington was on vacation.[12]   McArdle advised Thompson that he was aware of plaintiff's pornography complaint and had already ordered Gay to cease viewing pornography.  Gay advised

_____

[11] Although plaintiff's complaint indicated that she was subjected to pornography on "3 or 4 separate occasions", plaintiff testified differently at her deposition:

Q. Okay. Now going back to after the second time you said Sergeant Gay was looking at a pornographic movie. Were there other incidents when you saw them looking at pornography over in the patrol area at the public safety building?

A. No, them are the two times I remember.

[12] During McArdle's deposition, he denied that such a meeting took place. Gay testified that he was told by Thompson that plaintiff made a complaint but he could not recall the date. Gay testified, "[t]hey had me go back from the Sergeant's desk, back into the captain's conference room and she told me there had been this complaint made".

8

Thompson that magazines were brought in and viewed by police officers and CSOs.  On

September 27, 2003, Gay prepared an Inter-Departmental Memo, stating that pornography was

prohibited in the workplace.  On October 7, 2003, Harrington signed the memorandum.

Thompson stated that on October 8, 2003, she, "advised Harrington that the practice of bringing

pornographic movies and magazines must cease immediately".  Harrington received a written

reprimand and was counseled by Rathbun and told never to bring the laptop, magazines or

catalogs into the office.[13]

On October 20, 2003, Thompson submitted her written report to Duval regarding her

investigation of plaintiff's complaint about pornography and sexually explicit language.

Thompson concluded that the practice of watching pornographic movies at the front desk

constituted EEOC harassment.

Plaintiff's Telephone Conversations

According to McArdle, every telephone conversation on every line in the SPD was

recorded.  On September 26, 2003, Gay requisitioned and listened to tapes of plaintiff's telephone

conversations.  In those conversations, plaintiff was speaking with Chikowi and her husband.

Gay testified that plaintiff was complaining about Serrao's questions regarding her sick time and

also about preferential treatment that CSO French allegedly received.[14]  Gay stated that he did not

complete any departmental forms prior to requisitioning the tapes but that it was done, "on

_____

[13] Rathbun testified that he was plaintiff's supervisor "on and off" as he switched shifts with McArdle.

[14] In addition to plaintiff and Harrington, there were two other CSOs assigned to the Second Platoon at the relevant time period, French and Reeves.

orders" from Heenan and McArdle.[15]  Gay testified that he was not aware that plaintiff had a made a complaint to Chikowi at the time the tapes were obtained.

Heenan listened to the audio tapes of plaintiff's conversations and concluded, "[c]oncerning charges that CSO was insubordinate to Lt. Serrao in her phone conversations with her husband and Sgt. Chikowi it is my opinion that they should be dropped.  Although it is apparent that CSO Dotson is angry with Lt. Serrao I believe it is safe to assume that she believed she was having a private conversation with her husband or Sgt. Chikowi, and that her comments were intended for them only".

Road Duty Assignments

In 2002, plaintiff's work hours changed to 7 a.m. until 3 p.m.  Plaintiff was concerned with the change and the effect it would have on her child care situation and expressed her concerns to Lieutenant Francis Caruso ("Caruso")  and Serrao.[16]  Plaintiff claims that both Caruso and Serrao indicated that they would rotate her schedule with the other CSOs so that plaintiff could leave work on time.

On October 9, 2002, near the end of plaintiff's shift, plaintiff was dispatched to take a property call for two bicycles.[17]  Plaintiff refused to take the call as she would not be able to complete the call before her shift ended at 3:00 p.m.  At Gay's request, plaintiff prepared an Inter-

---

[15] During McArdle's deposition, he testified that although all conversations are taped, he was not sure how often they are monitored.  McArdle stated that he was not aware that plaintiff's telephone conversations were listened to until "after the fact".  McArdle testified that he could not recall who listened to the tapes or how he learned that the tapes were reviewed.

[16] The record does not contain any information with regard to Caruso or his position or duties within the SPD.

[17] According to Defendants' Statement of Material Facts Not In Dispute, the subject call was received on October 29, 2002.  However, this appears to be a typographical error as the record establishes that the call was received on October 9, 2002.

Departmental Memo regarding the incident.  Plaintiff stated, "I cannot take late calls and be over because my children are expecting me home after work".  Further, plaintiff stated that she was, "the only CSO on the road and [Lt. Caruso] assured me (in Sgt. M. Rathbun's presence) that I would be sharing the responsibility with CSO Reaves and CSO French".

On October 12, 2002, Gay prepared a Disciplinary Action Report regarding the October 9, 2002 incident.[18]  Gay prepared a statement of the violation which was reviewed by Rathbun.  Rathbun recommended that plaintiff receive a written reprimand for her personnel file and counseling.  The report was reviewed by Heenan and First Deputy Chief Steven P. Thompson.  The final action was decided by Duval who agreed with Rathbun's recommendation.

Plaintiff's Second Complaint to EEO Officer

On October 16, 2003, plaintiff forwarded a second complaint to Thompson.  In her complaint, plaintiff stated that she was, "being retaliated against".  Plaintiff advised Thompson that on September 25, 2003, she received a 10.1 from Culeton regarding her medical usage time.  Plaintiff also claimed she was working in, "a hostile working environment, as some of the employees of the SPD are treating me like I have a communicable disease".  Plaintiff claimed that since September 23, 2003, some of the employees no longer spoke to her or spoke to her as little as possible.  Plaintiff also complained of the "sexist and racist attitude of some of the employees of the SPD" and stated, "it's no coincidence that the only two CSOs that have worked in the most undesirable position on the platoon, working the road, also happen to be the only two minority CSOs, R. Reeves and myself".

Response to Plaintiff's Second Complaint

---

[18] The report was identified during the deposition of Duval.  Plaintiff claims she never received notice of the report.

Thompson asked plaintiff to be more specific regarding her charges of sexism and racism but plaintiff indicated that she could not.  Thompson also stated that plaintiff advised that "everyone has resumed talking with her".  Culeton advised Thompson that she was unaware of plaintiff's complaints regarding pornography at the time she sent the Sick Leave Memorandum to plaintiff.  With regard to the assignment of road duty, plaintiff indicated that she did not know how assignments were determined.  On this motion, Heenan provided an affidavit stating that plaintiff had not been discriminated against in being assigned road duty.  Heenan stated:

> All community service officers in all divisions, not just community service officers in the Patrol Division, perform road duty and work as crossing guards at school crosswalks. Road duty for community service officers is assigned on a rotating basis to all community service officers. All community service officers, regardless of race or gender, have been assigned road duty.  Plaintiff was not the only CSO to be assigned road duty in 2002 and 2003.

On October 27, 2003, Thompson submitted an Inter-Departmental-Memo to Duval. Thompson determined that the timing of the medical leave usage memorandum was a coincidence and not in response to plaintiff's complaint about the viewing of pornography and sexual comments.  Thompson concluded that the only complaint that could be substantiated was the complaint regarding pornography.  Thompson could not find evidence of racial/gender discrimination or retaliation.

EEOC Complaint

On November 13, 2003, plaintiff filed a complaint with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC").   In the complaint, plaintiff alleged, *inter alia*, as follows:

> 7.    This complaint is in all respects based upon past and continuing and ongoing harm and injury caused by the respondents in their discriminatory acts and policies.  Such acts and policies are illegally imposed on the complainant by

the defendants employing and endorsing a policy which treats women as second class citizens and excludes women from certain assignments, positions of visibility, authority, and power, and denies women assignments or transfers which lead to supervisory and management opportunities. Further, denying women access to these assignments leads to lower pay and fewer benefits.

8.  This complaint is also in all respects based upon past and continuing and ongoing harm and injury caused by the respondents in their racially discriminatory acts and policies. Such acts and policies are illegally imposed on the complainant by the defendants employing and endorsing a policy which treats Minority women as second class citizens and excludes them from certain assignments, positions of visibility, authority, and power, and denies Minority women assignments or transfers which lead to supervisory and management opportunities. Further, denying Minority women access to these assignments leads to lower pay and fewer benefits.

9.  The respondents Sgt. Gay and Pat Harrington and others have created a hostile work environment and subjected women to discriminatory and disparate treatment. The acts that constitute and contribute to such a hostile work environment include viewing pornographic movies at the workplace in the presence of the complainant and others, making sexual and derogatory remarks about females and their bodies, and treating women as beneath dignity.

10. The respondents routinely assign the complainant and other Minority employees to unpleasant assignments while excusing white employees from those same assignments. They also subject Minorities and women to stricter guidelines in the use of sick time related to workplace injury, performance evaluations, promotions and assignments.

11. The respondents subject Minorities and females to higher standards of performance and adherence to rules and regulation while excusing men and whites from the same standards of behavior.

19. The respondents have participated in and maintained a long standing practice, custom and policy of discrimination against women and minorities.

<u>Disciplines and Reprimands</u>

On January 5, 2004, plaintiff received a written reprimand from Rathbun for failing to

13

complete and submit a timely sick notification form.[19]  Plaintiff did not lose any pay, vacation or furlough days for the reprimand.

On January 8, 2004, plaintiff received a memorandum from Culeton.[20]  The memorandum served as a written reprimand for violation of Syracuse Police Department Rules & Regulations, Vol. 1, Art. 4, Section 1.14 sub EE-2 (Departmental vehicles, operation, care etc.).  According to the memorandum, plaintiff failed to use a departmental vehicle in a careful and prudent manner.

On March 15, 2004, plaintiff had a verbal argument with Harrington at the front desk.  On May 21, 2004, both plaintiff and Harrington received written reprimands and counseling for the altercation.

On August 3, 2006, Captain Thomas C. Galvin ("Galvin") prepared an Inter-Departmental Memo addressed to plaintiff advising plaintiff that a complaint had been filed with IAD (Internal Affairs Division) by Darcie Singleton.[21]  Ms. Singleton complained that plaintiff arrived at her home in an unmarked police vehicle and was "rude and nasty".  Plaintiff denied that the incident took place.[22]

In early 2007, plaintiff was arrested and arraigned for an incident that occurred on October 21, 2006 at the JC Penney store at Carousel Mall.  Heenan stated that the SPD had no input in the decision by the Onondaga District Attorney's Office to charge plaintiff with an offense for her

---

[19] The memo is dated January 5, 2003 however, the date is a typographical error as Rathbun refers to prior memoranda dated December 8, 2003 and December 9, 2003.

[20] The memorandum is dated January 8, 2003, however, the memorandum refers to a motor vehicle accident that occurred on September 11, 2003.  Based upon the record, the date of the memorandum is a typographical error.

[21] On this motion, Galvin provided an affidavit stating he is the Commanding Officer of the IAD.

[22] The record does not contain any additional information with regard to the incident.

conduct at the store.

EEOC Dismissal

On September 3, 2004, the EEOC issued plaintiff a Notice of Dismissal and Right to Sue. The EEOC investigated plaintiff's complaint and was unable to determine if any statutes under the EEOC's jurisdiction were violated.

## DISCUSSION

**I.      Standard for Summary Judgment**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See id*.  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See id*.

Courts have acknowledged the dangers of summary judgment in discrimination cases. "Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted).  A plaintiff must, however, provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.  *Id*.

**II.      Individual Liability under Title VII**

Plaintiff's first, second and third causes of action allege violations of Title VII by The City of Syracuse ("the City") and the individual defendants.  Title VII forbids an employer from discriminating against employees with respect to "compensation, terms, conditions, or privileges of employment," or "limit[ing], segregat[ing], or classify[ing] . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" on the basis of race, color, religion, sex or national origin.  *Patrolmen's Benevolent Ass'n of The City of N.Y. v. The City of N.Y.*, 310 F.3d 43, 51 (2d Cir. 2002) (citing 42 U.S.C. § 2000e-2(a)).

As a matter of law, it is well settled that individual defendants may not be held liable under Title VII.  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (internal citations omitted).  Accordingly, plaintiff's Title VII claims against defendants Duval, Gay, McArdle, Harrington and Rathbun are dismissed.

**III.      Title VII Claims against The City of Syracuse**

Plaintiff alleges that the City's Title VII violations included subjecting plaintiff to: (1) disparate treatment on the basis of gender and/or race; (2) a hostile work environment; and (3) retaliation based upon her complaints of discrimination.

**A.      Disparate Treatment Based Upon Gender and Race**

In analyzing plaintiff's claims of discrimination under Title VII, the Court reviews the record under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The first step in the *McDonnell Douglas* formulation requires a plaintiff to prove, by a preponderance of the evidence, a *prima facie* case of discrimination or unlawful retaliation by the employer.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446-47 (2d Cir. 1999).  If plaintiff

16

establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *Id.* at 446.  In the third step of the *McDonnell Douglas* process, the burden then shifts back to plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision, and that race and/or gender was the true reason.  *See id.*

The City contends that plaintiff cannot establish a *prima facie* case of disparate treatment on the basis of gender and race.  The City further claims that even if plaintiff could establish discrimination, summary judgment is still appropriate as the City's actions toward plaintiff were for legitimate, non-discriminatory reasons.

### 1.   *Prima Facie* Case

To establish a *prima facie* case of gender or race-based disparate treatment, plaintiff must show that: (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class.  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).  Defendant argues that plaintiff is unable to establish the second, third or fourth elements of a *prima facie* case of discrimination.[23]

### a.   Satisfactory Performance

The City claims that plaintiff's job performance was not satisfactory and that plaintiff violated work rules.  To satisfy the second element of the test, plaintiff need only demonstrate that she possessed the basic skills necessary for performance of the job.  *See de la Cruz v. New York*

---

[23]Defendant does not contend that plaintiff is not part of protected class.

17

*City Human Res. Admin.,* 82 F.3d 16, 20 (2d Cir. 1996).  To show "qualification" sufficiently to shift the burden of providing some explanation for discharge to the employer, the plaintiff "need not show perfect performance or even average performance".  *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (internal citations omitted).  Even if an employer is dissatisfied with the plaintiff's conduct, plaintiff need only "possess[] the basic skills necessary for the performance of her job".  *See Walker v. New York City Dep't of Corr.*, 2008 WL 4974425, at *12 (S.D.N.Y. 2008); *see also Slattery v. Swiss Reinsurance Am. Corp*., 248 F.3d 87, 92 (2d Cir. 2001) (holding that there was no basis for the district court to conclude that the plaintiff lacked minimal qualifications for a job that she had been performing for seven years).  An individual may well have the ability to perform job duties, even if her conduct on the job is inappropriate or offensive.  *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 171-172 (2d Cir. 2006) (internal citations omitted).

In the case at hand, the record establishes that plaintiff was appointed to the position of CSO in August 2000 and, at the time defendants filed the motion for summary judgment in 2007, plaintiff was still employed by the SPD.  Although plaintiff's job performance is relevant to show defendants' legitimate, non-discriminatory reasons for their actions, it is not persuasive at the *prima facie* stage.  *See Lee v. City of Syracuse*, 2009 WL 766269, at *11 (N.D.N.Y. 2009).  The Court finds that the record supports plaintiff's claim that she was performing her duties satisfactorily.

### b.   Adverse Action

As to the third factor, plaintiff argues that she was continually assigned road duty which constituted not only disparate treatment but an adverse employment action.  Plaintiff claims that road duty assignments were disproportionately assigned to her while the white CSOs available for

18

road duty were not assigned to the road.  Plaintiff also contends that she was subjected to harsher treatment for minor infractions than similarly situated white males.  Defendant contends that the record does not support plaintiff's allegation that she was assigned road duty while male and/or non-Hispanic CSO were not assigned the same task.  Defendant also argues that plaintiff failed to provide the names of any white male CSOs who were treated less harshly for work infractions.

An adverse employment action is a "materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities".  *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006).  An adverse action may or may not entail economic loss but there must be a link between the discrimination and some "tangible job benefits" such as "compensation, terms, conditions or privileges" of employment.  *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal citation omitted).  Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.  *Demoret*, 451 F.3d at 151 (internal citation omitted).  Inconvenient scheduling, that does not have any negative career consequences, is not adverse employment.  *See Baluta v. Hicksville Union Free Sch. Dist.*, 2000 WL 335770, at *6 (E.D.N.Y. 2000); *see also Gibbs v. City of New York*, 2005 WL 497796, at *7-9 (S.D.N.Y. 2005) (holding that the plaintiff's general unhappiness with an assignment that was also assigned to 150 other females with the same title as the plaintiff did not constitute an adverse employment action within the meaning of Title VII); *see also Mark v. Brookdale Univ. Hosp.*, 2005 WL 1521185, at * 26 (E.D.N.Y. 2005) (holding that although the plaintiff pled that she did not always get the shift that she wanted, she failed to

19

provide any proof that similarly situated white employees were given any preference in scheduling).

In this case, although plaintiff deemed road duty to be "undesirable", the record establishes that road duty was part of plaintiff's job responsibilities.  Plaintiff was admittedly unhappy with road duty as it created child care issues.  However, plaintiff's preference for desk duty in lieu of road duty does not constitute adverse employment action under Title VII as it was not a materially significant disadvantage with respect to her employment.  Moreover, the record is devoid of any evidence that plaintiff's male and/or non-Hispanic co-workers were not assigned road duty or that she received a disproportionate share of such assignments.  *See Miller v. Saint-Gobain Advanced Ceramics Corp.*, 2004 WL 941798, at *5 (W.D.N.Y. 2004) (concluding that "employers are not required to equally assign undesirable tasks with mathematical precision because there will often be legitimate business reasons for making work assignments that are unrelated to an employee's gender").  According to the record, plaintiff admitted to Thompson that she did not know how road duty was assigned.  Plaintiff has failed to demonstrate any negative career consequences of her road duty assignments and has failed to identify which employees, outside of her protected class, received more favorable treatment/assignments.

Plaintiff also alleges that she suffered harsh punishment for minor infractions.  However, there is no evidence that any punishment that plaintiff received resulted in any material alteration or disadvantage with her employment.  This alleged disparate scrutiny, by itself, does not constitute an adverse employment action because it did not affect the compensation, terms, conditions or privileges of plaintiff's employment.  *See Eldaghar v. City of New York Dept. of Citywide Admin. Servs.*, 2008 WL 2971467, at *5 (S.D.N.Y. 2008).  Based upon the record,

20

plaintiff did not lose any pay, sick time or vacation time as a result of any discipline or reprimand. The evidence proffered by plaintiff lacks any specific information and is wholly conclusory. Plaintiff has failed to present enough evidence to allow a rational fact finder to determine that plaintiff suffered any adverse employment action.

**c.**      **Inference of Discrimination**

Even assuming plaintiff could demonstrate that she suffered an adverse action, to establish a *prima facie* case, plaintiff still must demonstrate that the adverse action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in a protected class. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). To raise an inference of discrimination in a disparate treatment claim, a plaintiff must show that the employer treated her less favorably than a similarly situated employee outside her protected group. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Moore v. New York State Div. of Parole*, 2008 WL 4394677, at *13 (E.D.N.Y. 2008) (holding that by failing to identify the race and sex of employees in a comparison group, the plaintiff failed to meet her burden of establishing a *prima facie* case). For disparate treatment to be probative of discrimination, a plaintiff must first demonstrate she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself". *Walker*, 2008 WL 4974425, at *13 (quoting *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir.1997)).

In determining whether persons are "similarly situated in all material respects" the Second Circuit has advised courts to consider: (1) whether the plaintiff and those she maintains were similarly situated were subject to the same workplace standards; and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. *Walker,* 2008 WL

21

4974425, at *14 (citing *Graham*, 230 F.3d at 40).  To compare conduct under this standard, a plaintiff's and comparator's facts and circumstances need only bear a "reasonably close resemblance" and need not be identical.  *Id*.  The mere fact that a plaintiff believes that white, male employees similarly situated are not disciplined for similar professional failures is not a sufficient basis to infer discrimination.  *Dean v. Westchester County Dist. Attorney's Office*, 119 F.Supp.2d 424, 430 (S.D.N.Y. 2000).

With respect to disparate assignments of road duty, as previously discussed, plaintiff has presented nothing other than a conclusory statements and bare assertions that road assignments were disproportionate.  Plaintiff failed to provide specific comparisons between her treatment and the treatment of any other similarly situated male and/or non-Hispanic CSOs.  Therefore, a reasonable jury need not link the fact that plaintiff was assigned to road duty with any discriminatory intent by her employer.  *See Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 757 (2d Cir. 2004).

With regard to plaintiff's claim of harsher treatment, plaintiff alleges that the disparity in expectations and evaluations between plaintiff and CSO Harrington  was "striking".  Specifically, plaintiff asserts that:

> [d]efendants rated plaintiff's performance below standard because she had 6 instances of sick time use in a year.  Yet Defendant Harrington, who illegally ran her name; made biting remarks about her EEOC complaint; and said she'd look good under his truck; refused to speak to plaintiff; and set up an x-rated theater for the boys at the Syracuse Police Department was not marked below standard on anything at all.

In the case at hand, plaintiff and Harrington were both CSOs and subject to the same workplace standards.  However, plaintiff does not allege, nor does the record support any assertion that Harrington was disciplined for misuse of sick time or that Harrington engaged in

22

the same or similar conduct as plaintiff.  Indeed, the record reveals that Harrington was

disciplined for the pornography issue and for the March 2004 verbal argument with plaintiff.

Therefore, the Court finds that based upon the record, any disparate treatment between plaintiff

and Harrington would not be probative of discrimination.

In the view of the Court, plaintiff has not met her minimal burden of establishing a *prima*

*facie* case.  However, assuming the record supported plaintiff's claims, the *McDonnell Douglas*

process shifts the burden to defendants to articulate a non-discriminatory reason for their

employment decisions.

### 2.      Defendant's Proof of Legitimate, Non-discriminatory Reasons

Defendants burden of production is not a demanding one; it need only offer an explanation

for the employment decision.  *See St. Mary's*, 509 U.S. at 507.   The burden is merely "one of

production, not persuasion; it can involve no credibility assessment".  *Augustin v. Yale Club of*

*New York City*, 2006 WL 2690289, at *23 (S.D.N.Y. 2006) (citing *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 142 (2000).  An employer's dissatisfaction with, even a qualified

employee's performance may provide a legitimate, non-discriminatory reason for the employer's

adverse action.  *Augustin*, 2006 WL 2690289, at *23 (citing *Gregory*, 243 F.3d at 696).

With regard to road duty, the City argues that none of the actions taken were

discriminatory due to plaintiff's gender and/or race.  The City explains and has provided evidence

that CSOs were assigned road duty on a rotating basis.  *See Lewis v. City of Buffalo Police Dep't.*,

2007 WL 4191810, at *7 (W.D.N.Y. 2007) (holding that the defendant's explanation that the

rotation of police officer's detail was done in the interest of fairness was a legitimate non-

discriminatory reason).  Moreover, the City reasoned and provided documentation that plaintiff

23

was disciplined due to her own conduct that violated SPD Rules and Regulations and CSEA Labor Agreement which required plaintiff to submit a doctor's note for each sick/medical absence.

   As the City has offered legitimate, non-discriminatory reasons for plaintiff's road duty assignments and discipline, the burden shifts back to plaintiff to show that these reasons are pretextual.

### 3.   Plaintiff's Ultimate Burden

   The law is well-settled that an employee alleging unlawful discrimination must show that an employer's proffered reasons for an adverse employment action are a pretext for discrimination.  *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1339 (2d Cir. 1997) (en banc), *cert. denied,* 522 U.S. 1075 (1998).  "[A] reason cannot be proved to be a 'pretext for discrimination unless it is shown **both** that the reason was false **and** that discrimination was the real reason."  *Id.* (emphasis in original).  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, and if the plaintiff has failed to prove that there is evidence that would permit a rational fact finder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate.  *Patterson*, 375 F.3d at 221 (internal citations omitted).   The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity.  *Id.* (citing *U.S. Postal Service v. Aikens*, 460 U.S. 711 (1983)).

   In this case, plaintiff offers no evidence to suggest that defendants reason for assigning her road duty or punishing her for minor infractions was pretext.  Plaintiff alleges she and "other

minority officers" were disproportionately assigned road duty but, plaintiff failed to corroborate this allegation in any way, whether by documentation or by affidavits based on personal experience. *See Henry v. Daytop Village, Inc.*, 42 F.3d 89, 97 (2d Cir. 1994) (holding that the plaintiff failed to meet her burden with the statement that "ten white or male persons charged by the defendant with misconduct were allowed to remain on the payroll" as the allegation was unsubstantiated) . In opposition to defendant's motion, plaintiff provided affidavits from three individuals currently involved in civil litigation against defendants. However, those civil matters are completely unrelated to the case at hand. Moreover, the affirmants are not CSOs nor do they make any allegations of disproportionate road duty assignments or disparate treatment in relation to minor infractions. Therefore, these submissions are insufficient to show the existence of a genuine issue of fact in this matter. *See Patterson*, 375 F.3d at 223 (holding that affidavits of third parties without personal knowledge that are conclusory are insufficient to support the allegations advanced by the plaintiff). Moreover, with respect to plaintiff's infractions, plaintiff does not claim that she did not violate the SPD rules.

The record does not contain any evidence that would allow a reasonable fact finder to conclude that the City's stated reasons for assigning plaintiff road duty or punishing plaintiff for infractions were based in whole or in part on discrimination. Accordingly, the City is entitled to summary judgment and dismissal of plaintiff's Title VII claim of disparate treatment based upon gender and race.

### B.   Hostile Work Environment

Plaintiff alleges that she was subjected to a hostile work environment based upon her gender. Specifically, plaintiff alleges that the acts that contributed to a hostile work environment

25

included: viewing pornographic movies and magazines at the workplace in the presence of plaintiff; making sexual and derogatory remarks about females and their bodies; treating women as beneath dignity; and subjecting women to excessive scrutiny. Plaintiff contends that there is sufficient evidence to establish that plaintiff's work environment was severe and pervasive to alter the terms and conditions of her employment.

To succeed on a claim for hostile work environment under Title VII, plaintiff must establish: "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996). The standard for establishing a hostile work environment is high, *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003), and a claim cannot be based upon vague, unsupported allegations. *Thomas v. Bergdorff Goodman, Inc*., 2004 WL 2979960, at *7 (S.D.N.Y. 2004).

Plaintiff must prove both objective and subjective elements, i.e., that the conduct alleged is so severe and pervasive as to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. at 22. The Supreme Court has held that a work environment's hostility should be assessed based on the "totality of the circumstances". *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citing *Harris*, 510 U.S. at 23). Factors to consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Id*. With respect to the frequency of the alleged conduct, it is not only how long the

26

conduct lasts, but also the offensiveness of the actions that should be considered in determining whether such actions are pervasive.  *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 578 (2d Cir. 1989).   Isolated, minor episodes of harassment do not, however, merit relief.  *See Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997); *see also Ferguson v. New York City Transit Auth.*, 2005 WL 3149524, at *9 (E.D.N.Y. 2005) (holding that the plaintiff's claims, which occurred three months apart, were not severe or pervasive).

In the case of *Byong v. SL Green Realty Corp*, 2007 WL 831740, at *7 (S.D.N.Y. 2007), the plaintiff alleged that she was exposed to pornography, touched in an inappropriate manner and subjected to approximately six comments about her race and sex.  The court noted that the incidents occurred over a two-year employment term and were infrequent and isolated.  The court concluded:

> [w]hile the conduct cited by [the plaintiff] is repugnant to this Court, she cannot establish that these alleged episodes of harassment were sufficiently severe or pervasive to constitute a hostile work environment.

*Id*. at *7.

A workplace may be found to be hostile on the basis of gender "where the conduct at issue, though lacking any sexual component or any reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's gender". *Gregory,* 243 F.3d at 695; *accord Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80-81 (1998). Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or

27

abusive. *Oncale*, 523 U.S. at 81-82 (holding that Title VII does not establish a "general civility code" for the American workplace).

Plaintiff's deposition testimony and affidavit demonstrate that she perceived the work environment to be hostile and abusive based upon pornography being viewed in the patrol area and sexist comments directed towards women.  With regard to pornography, a review of the record reveals that the incidents were infrequent and isolated.  The record establishes that plaintiff saw pornography at the SPD on two occasions over a five to six month period.  On the first occasion, Harrington was viewing still photographs and plaintiff had to physically walk behind Harrington to observe what he was viewing.  The record does not indicate that the still photographs were publicly displayed or disseminated.  *See Ortiz-Moss v. New York City Dep't of Transp.*, 2008 WL 1899950, at *16, n. 19 (S.D.N.Y. 2008) (holding that if material is not publicly displayed, and is not something female employees are generally aware of, its contribution to a hostile work environment may be negligible).  Moreover, plaintiff has failed to present evidence to demonstrate how the conduct interfered with her work performance.  Based upon the record, no reasonable factfinder could conclude that these two events were severe or pervasive to constitute a hostile work environment.  *See Osorio v. Source Enter., Inc.*,  2006 WL 2548425, at *5 (S.D.N.Y. 2006) (holding that an offensive screen saver, and one isolated incident of men in a mailroom watching a pornographic movie were not objectionable enough and pervasive enough to create a hostile work environment).

As to plaintiff's claims of sexist remarks and derogatory views towards females, the record is devoid of any specific information about any particular sexist remark or derogatory views including when the remarks were allegedly made and by whom.  Plaintiff's claims are

vague and insufficient to enable a reasonable factfinder to find that these alleged remarks and/or views adversely affected the terms and conditions of plaintiff's employment.  *See Osorio*, 2006 WL 2548425, at *5.

Indeed, claims more severe than plaintiff's have been found insufficient, as a matter of law, to constitute a hostile work environment.  *See Alfano*, 294 F.3d at 379 (five incidents with sexual overtones in a span of four years, including a graphic cartoon and reference to the way an employee ate a carrot were insufficient to support a finding of a hostile work environment); *see also Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (holding that comments about the plaintiff's "sleek ass" and deliberate touching of the plaintiff's breasts were not of sufficient severity or pervasiveness as to alter the conditions of the plaintiff's employment).

Based upon the record, no reasonable fact finder could conclude that plaintiff was subjected to intimidation that was so severe or pervasive that it altered the conditions of her employment and created an abusive working environment based upon her gender.  Accordingly, the City is entitled to summary judgment and dismissal of plaintiff's hostile work environment claims under Title VII.

## C.    Retaliation

The City seeks summary judgment on plaintiff's third cause of action for retaliation and argues that plaintiff cannot establish any adverse action or any causal connection between plaintiff's claims of discrimination and alleged adverse actions.

Title VII forbids an employer from retaliating against an employee for complaining of employment discrimination:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any

29

practice made an unlawful employment practice by this subchapter, or, because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In order to establish a *prima facie* case of retaliation, a plaintiff must present evidence that would permit a rational trier of fact to find that: (1) she engaged in protected participation or opposition under Title VII; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006) (internal citations omitted).  Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment action.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).  If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.  *See id.*

As an initial matter, the City concedes that plaintiff engaged in protected participation and that the City was aware of this activity but contends that plaintiff failed to establish the third and fourth factors.  With respect to the third factor, in the case of *Burlington Northern & Santa Fe Railway  v. White*, 548 U.S. 53, 67 (2006), the Supreme Court held that Title VII's substantive provisions and its anti-retaliation provision are not "coterminous".   Rather, the Court held that a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means that it might have 'dissuaded a reasonable

30

worker from making or supporting a charge of discrimination.' " *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (C.A.D.C. 2006)).   Title VII's core anti-discriminatory provisions are narrower than Title VII's retaliation provisions and what might not qualify as an adverse employment action under Title VII's anti-discrimination provisions may still violate Title VII's anti-retaliation provisions.  *Id.*  Retaliation can be actionable even when the alleged adverse action "had not effected any change in [the employee's] salary, benefits, job, title, grade or hours".  *Kessler*, 461 F.3d at 201.  Any reasonable employee that believed that her employers would engage in a concerted effort to drive her from her job if she engaged in Title VII protected activity would think twice about doing so.  *Patane,* 508 F.3d at 116.  Although the Court "loosened the standard previously applied in retaliation claims", the *White* standard is still a rigorous one.  *Dixon v. City of New York*, 2008 WL 4453201, at *11 (E.D.N.Y. 2008).

With respect to the fourth prong, causation can be demonstrated "indirectly by showing that the protected activity was followed closely by discriminatory treatment, through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant".  *De Cintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).  If a plaintiff offers no direct evidence or evidence of fellow employees who engaged in similar conduct, the only way that plaintiff can establish causation is through an inference created by the temporal proximity between the protected activity and adverse action.  *Monclova v. City of New York*, 2008 WL 822117, at *7 (E.D.N.Y. 2008).  Plaintiffs who resort solely to temporal proximity in proving causation must demonstrate the existence of a time frame that is "very close".  *Clark County Sch.*

*Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).  There is no "bright line" to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship.  *Id.*

Nevertheless, close temporal proximity will not salvage a retaliation claim where the adverse employment action is initiated before the protected activity occurs. *See Kwentoh v. State Dep't of Children & Families Juvenile*, 588 F.Supp.2d 292, 303 (2d Cir. 2008) (holding that the plaintiff's negative performance review contained comments regarding the basis for the appraisal including her poor judgment relating to an incident before the plaintiff filed her complaint and therefore was a legitimate reason); *see also Lewis v. N. Gen. Hosp.*, 502 F.Supp.2d 390, 405-407 (S.D.N.Y. 2007) (citing *Ziegler v. Marriott Intern., Inc.*, 2005 WL 1022431, at *15 (S.D.N.Y. 2005)) (holding that the plaintiff's termination one day after his charge of discrimination was not retaliation as the defendant had previously issued two written warnings to the plaintiff that formed the basis for his discharge).   Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.  *Slattery*, 248 F.3d at 95; *see also Monclova*, 2008 WL 822117, at *8 (holding that evidence of prior adverse actions, which preceded the protected activity and could not have been retaliatory, can defeat the inference of causation as long as the defendants' actions remained consistent before and after the protected activity took place).

In the case at hand, plaintiff alleges that after her initial complaint to Thompson about pornography that plaintiff was subjected to numerous acts of retaliation including:  (1) heightened criticism of her performance including excessive reprimands/discipline; (2) unfair treatment by her co-workers; (3) eavesdropping on her telephone conversations; (4) disparately assigning

plaintiff road duty; and (5) intimidation by instigation of criminal prosecution including reporting plaintiff to Internal Affairs.[24]

### 1. Heightened Criticism, Memoranda and Reprimands

Plaintiff alleges that she suffered from heightened criticism of her performance and cites to "numerous memoranda that were issued to plaintiff by defendants following her complaint of discrimination".

The law in this circuit, post-*White*, is clear that an employer's excessive scrutiny of an employee, without more, fails to satisfy the requirements for an adverse employment action. *Dixon*, 2008 WL 4453201, at *16 (internal citations omitted).  Moreover, reprimands that do not lead to materially adverse employment consequences are generally not considered actionable forms of retaliation.  *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F.Supp.2d 275, 300 (E.D.N.Y. 2005) (internal citations omitted).

In the case at hand, according to the record, plaintiff received three written reprimands after her complaints.  No action was taken against plaintiff as a result of the written reprimands or discipline.  Plaintiff did not lose any pay, vacation days or any other benefits.  Culeton provided an affidavit stating that, "[t]he written reprimands and counseling plaintiff received as discipline has no effect on plaintiff's pay, number of vacation days and sick leave and other benefits and privileges that plaintiff enjoys as part of her employment with the City as a CSO".  The

---

[24] Plaintiff's submissions to the Court lack specificity and clarity in describing the alleged retaliatory incidents.  Therefore, the Court has analyzed the entire record to determine which of the adverse actions complained of could have been in retaliation for one of plaintiff's protected activities.  *See Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 608 (2d Cir.2006).

reprimands and discipline did not have any future consequences and therefore, could not have reasonably dissuaded plaintiff from raising a claim of discrimination.

Moreover, with regard to the Medical Usage Memorandum issued by Culeton, the record reveals that plaintiff had ongoing disputes with her supervisors regarding sick time before she filed her complaint with Thompson.  The record is devoid of any evidence that would permit a reasonable fact finder to conclude that Culeton acted in retaliation by issuing the memorandum. Therefore, any inference of causation created by temporal proximity is defeated.  Given the sequence of events, it is not reasonable to infer that Culeton's sick leave memorandum was issued to plaintiff in retaliation for her complaint of pornography.

Even assuming plaintiff made out a *prima facie* case for retaliation, the Court finds based on the record that the City has clearly carried its burden of articulating legitimate, nondiscriminatory reasons for the reprimands and discipline.  The City explains that plaintiff was, "disciplined because she violated SPD Rules and Regulations".  Further, the Labor Agreement between the CSEA and the City indicates that the City may require a doctor's certificate when an employee is absent for sex non-consecutive days within one calendar year.  Plaintiff received the sick leave memorandum from Culeton on September 23, 2003, the same day that she provided Thompson with a written complaint of pornography.  Culeton provided an affidavit stating that she was unaware of plaintiff's complaint and that "almost all CSOs received the memorandum". Accordingly, the Court finds that the City has articulated legitimate, nondiscriminatory reasons for issuing the reprimands/disciplines to plaintiff.

The burden then shifts back to plaintiff to show that the proffered reason was merely a pretext, that is, that the reason given was not the true reason for the employment decision, and

that discrimination was.  Plaintiff's opposition papers are devoid of any argument in this regard.

Plaintiff made her complaints to Thompson in September and October of 2003 and filed her

EEOC complaint in November 2003.  However, under the circumstances here, the proximity in

time between the complaints and the memoranda/reprimands/discipline, without more, is wholly

insufficient to raise a triable question of fact on the issue of pretext.  Even viewing all the

evidence in the light most favorable to plaintiff, the Court finds that she has failed to meet her

burden.  Consequently, the City is entitled to summary judgment and dismissal of plaintiff's Title

VII retaliation claims based upon this alleged retaliatory act.

> **2.      Treatment by Co-Workers**

Petty slights, minor annoyances, and simple lack of good manners will not deter a worker

from making a charge of discrimination.  *See Burlington Northern*, 548 U.S. at 68; *see also*

*McWhite v. New York City Housing Auth.*, 2008 WL 1699446, at *13 (E.D.N.Y. 2008) (holding

that allegations that a supervisor ordered employees not to speak with the plaintiff is a type of

"minor annoyance" that would not deter a reasonable person from filing a charge of

discrimination).

Plaintiff testified that in the Fall 2003, her co-workers were not talking to her and "made

fun of her".  However, plaintiff has failed to establish how any such treatment by her co-workers

resulted in any adverse employment action and thus, plaintiff cannot establish a *prima facie* case

of retaliation as to this claim.  Therefore, the City is entitled to summary judgment and dismissal

of plaintiff's Title VII retaliation claims based upon this alleged act.

> **3.      Eavesdropping on conversations**

Plaintiff alleges that after she complained about pornography, defendants eavesdropped on her telephone conversations.  Viewing the evidence in a light most favorable to plaintiff, a reasonable fact finder could conclude that the requisition and monitoring of plaintiff's telephone conversations was intrusive and could have dissuaded plaintiff from filing a claim.  *See Zakrzewska v. The New Sch.*, 2009 WL 252094, at *7 (S.D.N.Y. 2009) (holding that a jury would be entitled to conclude that monitoring of the plaintiff's computer usage would reasonably deter an employee from reporting harassment).  Moreover, an inference of retaliation is created by the fact that only three days elapsed between when plaintiff filed a complaint with Thompson and when Gay obtained the tape recordings of her telephone conversations.

Defendants' motion papers are devoid of any legitimate, non-retaliatory reasons for eavesdropping on plaintiff's telephone conversations.  Indeed, defendants have not provided any reasons with regard to this act.  The only argument defendants advance is that, "all of the alleged retaliatory actions of the City took place before the EEOC complaint or years after the complaint had been filed".  However, it is not only conduct that will deter someone from reporting to the EEOC but also conduct that would deter a person from reporting discrimination to their employer. *See Lee*, 2009 WL 766269, at *13 (citing *Burlington Northern*, 548 U.S. at 66 ).  In this case, the eavesdropping occurred in temporal proximity to plaintiff's complaints to Thompson.  Moreover, the record contains inconsistencies with regard to the tapes. Specifically, Gay testified that McArdle directed him to obtain the tapes.  However, McArdle testified that he had no knowledge regarding who listened to the tapes or how he learned that the tapes were requisitioned.  These inconsistencies create additional questions of fact precluding summary judgment on this issue.  Accordingly, the Court finds that plaintiff's retaliation claim with regard to defendants'

36

eavesdropping on her telephone conversations, defendants have not met their burden of proving any legitimate, non-retaliatory reason to warrant summary judgment on this issue.  Accordingly, the City's motion for summary judgment and dismissal of plaintiff's Title VII retaliation claim based upon this alleged retaliatory act is denied.

### 4.      Disparate Assignment of Road Duty

Plaintiff alleges that she received a disproportionate assignment of road duty in retaliation for her claims.  However, as this Court previously determined this allegation to be without merit, the City is entitled to summary judgment and dismissal of any claim of retaliation with regard to road duty assignments.

### 5.      Intimidation and Prosecution

Plaintiff alleges that the SPD's handling of her arrest with regard to the incident at JC Penney was retaliatory.  Specifically, plaintiff alleges that the SPD, "orchestrated a scenario where I would be arrested to discredit and humiliate me in retaliation for bringing my lawsuit and complaining about the Department's discriminatory ways".

Viewing the facts in a light most favorable to plaintiff, this allegation lacks merit. Plaintiff has provided nothing more than conclusory statements to support her claims.  Further, the alleged retaliatory action occurred 3 years after plaintiff filed her EEOC complaint, therefore plaintiff has failed to establish a causal nexus.  *See Chang v. Safe Horizons*, 254 Fed.Appx. 838, 839 (2d Cir. 2007) (holding that the plaintiff's termination almost one year after her complaint of discrimination undermined any nexus based upon temporal proximity).  Even assuming plaintiff was able to establish a *prima facie* case of retaliation based upon this act, defendants have proffered legitimate non-retaliatory reasons, to wit - that all decisions including the decision to

37

issue an arrest warrant rather an appearance ticket were made by the District Attorney's office and not by the SPD.  In response, plaintiff has failed to establish that defendants' reasons were pretextual.  Consequently, defendants' motion for summary judgment based upon this alleged retaliatory act is granted.

Accordingly, the Court finds that defendants' motion for summary judgment and dismissal of plaintiff's claims of retaliation in violation of Title VII is granted in part and denied in accordance with the aforementioned analysis.

**III.    § 1981**[25]

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship including in the employment setting".  *Hawkins v. County of Oneida, New York*, 497 F.Supp.2d 362, 376 (N.D.N.Y. 2007) (citing *Patterson*, 375 F.3d at 224-225).  Section 1981 claims can only be brought based upon race. *See McCoy v. City of New York*, 131 F.Supp.2d 363, 377 (E.D.N.Y. 2001) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).   Section 1981 claim may be brought against defendants in their individual and official capacities, *see Whidbee v. Garzarelli Food Specialties*, 223 F.3d 62, 75 (2d Cir. 2000), and are evaluated in the same manner as a Title VII claim.  *See Philippeaux v. N. Cent. Bronx Hosp.*, 871 F.Supp. 640, 654 (S.D.N.Y. 1994).  As the Court has already determined that defendants are entitled to summary judgment with respect to plaintiff's Title VII discrimination and hostile work environment claims, plaintiff's claims of discrimination and

---

[25] Plaintiff has alleged a substantive violation of § 1981 but does not distinguish among the various named defendants, therefore the Court assumes that plaintiff asserts a violation against each of the individual defendants as well as the City.  *See McCoy v. City of New York*, 131F.Supp.2d 363, 378 (E.D.N.Y. 2001).

hostile work environment under § 1981 must fail as well.  However, as plaintiff set forth a *prima facie* case of retaliation against the City based upon the alleged retaliatory conduct of Gay and McArdle involving the plaintiff's telephone conversations, the Court must analyze whether or not plaintiff has established a retaliation claim pursuant to § 1981.

### A.    Individual Defendants

To establish individual liability under § 1981, a plaintiff must demonstrate that the defendant was personally involved in the complained of activity.  *Carmody v. The City of New York*, 2006 WL 3317026, at *16 (S.D.N.Y. 2006) (citing *Whidbee*, 223 F.3d at 75).  Personal involvement may be established by direct participation in the illegal activity, negligence in supervising subordinates who engage in the wrongful behavior, and/or failure to act when made aware unconstitutional acts were occurring.  *Id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

The record reveals that Gay requisitioned the tapes of plaintiff's telephone conversations. Gay's involvement in the incident is undisputed.  Gay claimed that McArdle directed him to obtain the tapes.  Although McArdle denied any involvement with the tapes, the facts are sufficient to create an issue of fact as to whether or not McArdle was personally involved in the decision.  Therefore, defendants' motion for summary judgment and dismissal of plaintiff's § 1981 claims as against Gay and McArdle is denied.

With respect to the other individual defendants, there is no allegation that Harrington or Rathbun participated in this alleged adverse employment action.  With regard to Duval, plaintiff testified that, "Chief Duval came in and caught them listening to the tapes and he was really irate. And he ended up, I believe, destroying the tapes".  Accordingly, defendants' motion for summary

judgment and dismissal of plaintiff's § 1981 claim against Duval, Harrington and Rathbun is granted.

### B.      Municipal Liability

Section 1981 does not impose vicarious liability on municipalities for employee decisions made in the course of their official duties. *Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F.Supp.2d 224, 232 (E.D.N.Y. 2003) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 721 (1989)). To state a Section 1981 claim against the City or defendants in their official capacity, plaintiff must establish that the retaliatory activities were performed pursuant to an official policy or custom. *Olsen v. County of Nassau*, 2008 WL 4838705, at *7 (E.D.N.Y. 2008). To show an official policy or custom, a plaintiff may show that: (1) the discrimination was so persistent or widespread as to constitute a custom or usage with the force of law; or (2) the discrimination conducted by subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. *Carmody*, 2006 WL 3317026, at *17 (citing *Patterson*, 375 F.3d at 226).

### 1.      Custom or Practice

Conclusory allegations of a municipalities pattern or policy of unconstitutional behavior are insufficient. *McAllister v. New York City Police Dep't*, 49 F.Supp.2d 688, 705 (S.D.N.Y. 1999). To survive summary judgment, plaintiff must present evidence of the complained-of activity by defendants in similar circumstances outside the present case. *See Lipton*, 315 F.Supp.2d 434, 453 (S.D.N.Y. 2004) (citing *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991)).

40

In this regard, plaintiff has failed to show the that alleged retaliatory action was widespread enough to rise to the level of a policy or custom.  The record is devoid of any evidence of retaliatory conduct involving the monitoring of telephone conversations.  As previously discussed, plaintiff attempts to raise an issue of fact with the submission of affidavits from three individuals who are not similarly situated.  These affidavits are devoid of any allegations that the individuals were subjected to retaliatory conduct involving monitored telephone conversations.  Plaintiff has set forth conclusory allegations and has not established the existence of a custom or policy of eavesdropping on telephone conversations as retaliatory conduct.

### 2.      Final Policymaker

Plaintiff contends that Duval was a policymaking official charged with the ultimate authority over personnel decisions within the SPD.  The Supreme Court has held that municipal liability attaches where the decisionmaker possesses final authority to establish policy with respect to the action ordered and where a deliberate choice to follow a course of action was made from among various alternatives by the official.  *See Pembaur v. Cincinnati*, 475 U.S. 469 (1986).

Based upon the record, the Court is unable to conclude, as a matter of law, that Duval had final policymaking authority.  Neither party has submitted the relevant SPD Rules and Regulations that would establish exactly where final policymaking authority rested.  *See Verri v. Nanna*, 972 F.Supp. 773, 794 (S.D.N.Y. 1997).  Moreover, Duval's deposition does not contain any information indicating that he had such authority.  Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's § 1981 claims against the City is granted.

**IV.      § 1983**

41

Section 1983 allows an action at law against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws". *Patterson*, 375 F.3d at 225 (citing 42 U.S.C. § 1983).  Section 1983 is not itself a source of substantive rights.  *Id.* (internal citations omitted) (holding that § 1983 provides a method for vindicating federal rights elsewhere conferred).   In order to prevail on a claim under § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States.  *Kercado-Clymer v. City of Amsterdam*, 2009 WL 236063, at *3 (N.D.N.Y. 2009).

### A.    Equal Protection

Plaintiff alleges that defendants deprived her of her constitutional right of Equal Protection under the Fourteenth Amendment based upon the same evidence that establishes that plaintiff was subjected to disparate treatment because of her gender and race.  The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike".  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Sex-based discrimination may be actionable under § 1983 as a violation of equal protection.  *Demoret*, 451 F.3d at 149 (concluding that § 1983 and the Equal Protection Clause protect public employees from various forms of discrimination including hostile work environment and disparate treatment on the basis of gender).  Retaliation for complaining of gender discrimination is not an Equal Protection clause violation.  *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1988).  In order to establish a claim of selective enforcement under the Equal Protection clause, plaintiff must prove that compared with others similarly situated, she was

42

selectively treated, and that such selective treatment was based on an impermissible

consideration.  *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal

citation omitted).  The burden shifting framework of *McDonnell Douglas* applies to equal

protection claims.  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also*

*Lee*, 2009 WL 766269, at *19 (citing *Carrion v. Yeshiva Univ.*, 535 F.2d 722, 729 (2d Cir. 1976))

(holding that where the plaintiff made the same allegations of unlawful discrimination under Title

VII, § 1983 did not give rise to a separate cause of action).

In this case, plaintiff has not proffered any additional facts as the basis for this claim other

than those previously considered by this Court.  Therefore, as plaintiff has failed to establish

discrimination based upon race and/or gender or a hostile work environment, all defendants are

entitled to summary judgment and dismissal of plaintiff's Equal Protection claims.

## B.    First Amendment

Plaintiff alleges that defendants retaliated against her for complaints of unlawful and

discriminatory practices in violation of her First Amendment rights.  To succeed on a First

Amendment retaliation claim pursuant to § 1983, plaintiff must show by a preponderance of the

evidence that: (1) her speech was constitutionally protected; (2) she suffered an adverse

employment decision; and (3) a causal connection exists between her speech and the adverse

employment determination against her, so that it can be said that her speech was a motivating

factor in the determination. *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady County*,

252 F.3d 545, 553 (2d Cir.2001) (internal citation omitted).   The legal framework for First

Amendment retaliation claims brought under § 1983 is virtually identical to the *McDonnell*

*Douglas* burden-shifting analysis used for Title VII retaliation claims.  *Lore v. City of Syracuse*,

583 F.Supp.2d 345, 380-82 (N.D.N.Y. 2008) (citing *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir. 2000)).

The initial inquiry is whether plaintiff's speech was a matter of public concern.  While this determination may be somewhat fact-intensive, it presents a question of law for the court to resolve.  *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003).  The issue is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose".  *Olsen v. County of Nassau*, 2008 WL 4838705, at *4 (E.D.N.Y. 2008) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008)).  An issue is a matter of public concern, "[i]f it is clear that plaintiff wanted to debate issues of sex discrimination and that [the proposed] suit sought 'relief against pervasive or systemic misconduct by a public agency or public officials', or that [the] suit was 'part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention.' " *Quinn,* 53 F.Supp.2d at 361 (internal citations omitted); *see also Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir.1993) (holding that the filing of a complaint may speak on a matter of public concern where the complaints contained therein implicate system-wide discrimination).  Issues of mere personal importance to the employee are not matters of public concern. *Connick v. Meyers*, 461 U.S. 138, 149 (1983); *see also Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994) (the fact that an employee's speech touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal); *see also Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.1991) (the plaintiff's writings convinced the court that the plaintiff's goal was to protect her own reputation and development as a doctor).

The Second Circuit has permitted First Amendment retaliation claims based upon the filing of discrimination complaints within a police department.  *See Brown v. City of Syracuse,* 2008 WL 5451020, at *3 (N.D.N.Y. 2008) (citing *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)) (holding that the plaintiff's complaints regarding alleged discriminatory treatment of African-American officers was a matter of political, social or other concern in the community); *see also Valentin v. New York City*, 1997 WL 33323099, at *9 (E.D.N.Y. 1997) (holding that complaints by the plaintiff, an employee with the housing police, about the sexually hostile working environment within the public service area addressed a matter of public concern); *see also Poulsen v. City of N. Tonawanda*, 811 F.Supp. 884, 894 (W.D.N.Y. 1993) (holding that although the plaintiff's primary motivation for her EEOC complaint was to stop harassment against her personally, the plaintiff raised an issue of public concern in criticizing the treatment of women in the police department).

Notwithstanding, when the employee's "complaints [are] personal in nature and generally related to her own situation," they are not matters of public concern.  *See Luca v. County of Nassau*, 2007 WL 1343670, at *5 (E.D.N.Y. 2007) (holding that the plaintiff's complaint alleged only discrimination and sexual harassment directed towards her); *see also Worthington v. County of Suffolk*, 2007 WL 2115038, at *3 (E.D.N.Y. 2007) (holding that the plaintiff did not complain about a practice of retaliation or discrimination within the police department, but merely made complaints about her own treatment)*; see also Fusco v. City of Rensselaer, N.Y.*, 2006 WL 752794, at *8 (N.D.N.Y. 2006) (holding that speech about individual or isolated problems within a police department, or one of its officers, is not a matter of public concern).

45

Plaintiff argues that the statements made in her EEOC complaint constituted protected speech.[26]  Plaintiff argues that the actions which established plaintiff's Title VII retaliation claim also support her First Amendment claim.   Defendants claim that the record does not establish that plaintiff was seeking redress of grievances that dealt with matters of public concern.  Moreover, defendants claim that plaintiff did not suffer any adverse employment action.

Arguably, plaintiff's EEOC complaint alleged a pattern of system wide discrimination that could have involved a matter of public concern.  However, even if plaintiff establishes that the statements in the complaint constituted protected speech, she still must prove that the adverse action was motivated by her speech.  *See Walker v. New York City Transit Auth.,* 2001 WL 1098022, at *13 (S.D.N.Y. 2001) (internal citations omitted) (even assuming the plaintiff could meet the public concern requirement, he would be unable to satisfy the causation prong of the test for the same reasons that he cannot make out a [Title VII] retaliation claim).  As previously determined by this court, the only adverse action to survive summary judgment involved defendants' eavesdropping on plaintiff's telephone conversations.  However, based upon the record, Gay listened to plaintiff's telephone conversations **prior** to plaintiff filing the EEOC complaint.  Therefore, plaintiff cannot establish a causal connection between the alleged adverse action and plaintiff's speech.  *See Grennan v. Nassau County,* 2007 WL 952067, at *10 (E.D.N.Y. 2007) (*Cf. McMahon v. New York City Bd. of Educ.,* 2006 WL 3680624, *10 (E.D.N.Y. 2006)) (finding no causal connection as a matter of logic between suspension that

---

[26] Plaintiff's complaints to Thompson involved plaintiff's individual employment situation, were personal in nature and related to plaintiff's own employment situation and alleged retaliation.  There is no indication, from these memorandums, that plaintiff "wanted to debate issues of sex [or race] discrimination" or that her complaints were motivated by anything other than an intent to deal with her own employment situation.  *See Saulpaugh,* 4 F.3d at 143.

46

occurred two weeks before speech on public concern); *see also Carmellino v. Dist. 20 of New York City Dept. of Educ.*, 2006 WL 2583019, at *19 (S.D.N.Y.2006) (to establish causal relationship the plaintiff must, at minimum, introduce evidence that the protected activity in question occurred before the adverse employment action).

Accordingly, defendants' motion for summary judgment and dismissal of plaintiff's First Amendment cause of action pursuant to § 1983 is granted as to all defendants.[27]

### C.    Other § 1983 Claims

Defendants argue that plaintiff's fifth cause of action must be dismissed because § 1983 is not a separate cause of action.  Section 1983 does not give rise to a separate cause of action for unlawful discrimination based upon the same allegations plaintiff asserted in support of her Title VII claim.  *See Lore v. City of Syracuse*, 583 F.Supp.2d 345, 380 (N.D.N.Y. 2008) (citing *Carrion,*535 F.2d at 729 (2d Cir. 1976).  Therefore, to the extent that plaintiff attempts to state a substantive cause of action under § 1983, defendants' motion for summary judgment and dismissal is granted.

## V.    Qualified Immunity

The individual defendants argue for qualified immunity and claim that their actions were just and proper under the circumstances and any test of objective reasonability.  Specifically, defendants contend that, "considering the safety sensitive nature of plaintiff's job with the City, there can be no doubt that the individual [d]efendants' actions can and must be protected under the qualified immunity doctrine".

---

[27]As plaintiff has failed to prove a *prima facie* case under the Equal Protection Clause or First Amendment, it is not necessary for the Court to discuss the parties arguments with regard to plaintiff's burden of establishing municipal or individual liability.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   For a defendant to secure summary judgment based on qualified immunity, he must show that no reasonable jury, looking at the evidence in a light most favorable to the plaintiff, could conclude that it was objectively unreasonable for the defendant to believe he was acting in a manner that did not violate a federally protected right.  *Donovan v. Inc. Vill. of Malverne*, 547 F.Supp.2d 210, 221 (E.D.N.Y. 2008) (internal citations omitted).  If the law was clearly established, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct.  *Sullivan v. Schweikhard*, 968 F.Supp. 910, 915 (S.D.N.Y. 1997) (citing *Harlow*, 457 U.S. at 818-19).   A retaliation claim involves retaliatory animus and makes defendants' motivation a triable issue of fact precluding dismissal on qualified immunity grounds.  *See Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (holding that until the issue of the defendant's intent is resolved by the factfinder, the plaintiff's retaliation claim cannot be dismissed on qualified immunity grounds).

The record, as it presently exists, does not establish that Gay and McArdle acted with "objective reasonableness" when they requisitioned and monitored plaintiff's telephone calls.  *See Anemone v. Metro. Transp. Auth.,* 410 F.Supp.2d 255, 274 (S.D.N.Y. 2006) (holding that although the defendant claimed his conduct was objectively reasonable, the defendant did not clear the "formidable hurdles" he confronted when invoking qualified immunity).  The issue of whether or not Gay and McArdle acted in an objectively reasonable manner cannot be determined on this motion.  *See Costa v. City of N.Y.*, 546 F.Supp.2d 117, 119 (S.D.N.Y. 2008).  Viewing the

48

evidence in a light most favorable to plaintiff, a reasonable factfinder could conclude that a

person in Gay or McArdle's position should have known that eavesdropping on plaintiff's

telephone conversations violated plaintiff's rights.[28]   Accordingly, defendants' motion for

summary judgment and dismissal based upon qualified immunity is denied.

**VI.    New York Human Rights Law**

Defendants allege that plaintiff's NYHRL claims should be dismissed as against the City

and defendants in their official capacities due to plaintiff's failure to serve a Notice of Claim as

required by Syracuse City Charter § 8-115(3).[29]   Moreover, defendants claim that summary

judgment is warranted in favor of all defendants as plaintiff's claims under Title VII and the

NYHRL are identical.

**A.    Notice of Claim**

An action in tort against New York municipalities, or any of their officers, agents, or

employees, requires service of a notice of claim on the municipality within ninety days after the

claim arises.  *See* N.Y. General Municipal Law § 50-e.  However, New York courts have

specifically ruled that General Municipal Law § 50-e does not apply to employment

discrimination claims brought pursuant to § 296.  *See, e.g., Mills v. County of Monroe*, 89 A.D.2d

776 (4th Dep't 1982), *aff'd*, 59 N.Y.2d 307, *cert. denied*, 464 U.S. 1018 (1983).  Moreover,

district courts in this Circuit have found that a Notice of Claim is not required for discrimination

---

[28] As the court has determined that Harrington and Rathbun are entitled to summary judgment on plaintiff's Title VII, § 1981 and § 1983 claims, the issue of whether or not they are entitled to qualified immunity is moot.

[29] The Court is unable to analyze defendants' claim based upon § 8-115(3) as the record does not contain a copy of the Syracuse City Charter. However, courts in this district have rejected similar arguments. *See Kennedy v. Fitzgerald*, 102 F.Supp.2d 100, 102 (N.D.N.Y. 2000) (holding that a Notice of Claim was not required as the plaintiff's claim fell within the public interest exception to General Municipal Law §50-e as applied to § 8-115 of the Syracuse City Charter).

claims brought under the New York Human Rights Law.  *Lee*, 2009 WL 766269, at *22; *see also Richards v. City of New York*, 2007 WL 1030294, at *10 (E.D.N.Y. 2007); *see also Dortz v. City of New York*, 904 F.Supp. 127, 141-42 (S.D.N.Y. 1995) (holding that since there is no requirement that the plaintiff file a notice of claim for her claims brought under Executive Law § 296, her failure to do so does not deprive the Court of jurisdiction).

###    B.     Standard of Review

New York State Human Rights Law § 296 provides that:

> "[i]t shall be an unlawful discriminatory practice: [f]or an employer [t]o discriminate against any person in his pursuit of such programs or to discriminate against such person in the terms, conditions or privileges of such programs because of race, creed, color, national origin, sex, age, disability or marital status."

According to the Second Circuit, "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII".  *Torres v. Pisano*, 116 F.3d 625, 629, n. 1 (2d Cir. 1997), *cert. denied*, 522 U.S. 997 (1997); *see also Van Zant*, 80 F.3d at 714-716, n. 6.  Although individuals are not subject to liability under Title VII, they may be liable under the NYHRL if they were personally involved in the conduct giving rise to the claim. *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000).  It is generally accepted, however, that once an employer has been found to have not discriminated, there is no predicate for imposing liability on the supervisors under an aiding and abetting theory.  *Yerry v. Pizza Hut of Southeast Kansas*,  186 F.Supp.2d 178, 187 (N.D.N.Y. 2002) (citing *Falbaum v. Pomerantz*, 19 Fed. Appx. 10 (2d Cir. 2001)).

In this case, plaintiffs' inability to establish a *prima facie* case for discrimination or hostile work environment under Title VII is equally fatal to those claims under state law.  *See Seils v. Rochester City Sch. Dist.*, 192 F.Supp.2d 100, 120 (W.D.N.Y. 2002) (internal citation omitted).

However, as the Court previously discussed, plaintiff's retaliation claim involving the act of eavesdropping on her telephone conversations survives summary judgment with regard to defendants the City, Gay and McArdle.  Accordingly, defendants' motion for summary judgment and dismissal of the NYHRL retaliation claims, with regard to eavesdropping, is denied as to the City, Gay and McArdle and granted as to Duval, Harrington and Rathbun for the reasons set forth above.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's Title VII claims, as alleged against Dennis Duval, Sgt. Timothy Gay, Mark McArdle, Patrick Harrington and Michael Rathbun individually are **GRANTED**; and it is further

**ORDERED** that City of Syracuse's motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's Title VII claims for race and gender discrimination and hostile work environment is **GRANTED**; and it is further

**ORDERED** that City of Syracuse's motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's Title VII claims for retaliation based upon conduct including heightened criticisms and reprimands; the medical leave usage memorandum; treatment by her co-workers; and intimidation and prosecution are **GRANTED**; and it is further

**ORDERED** that City of Syracuse's motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's Title VII claims for retaliation based upon the act of eavesdropping on plaintiff's telephone conversations is **DENIED**; and it is further

**ORDERED** that defendants' motions for summary judgment (Dkt. No. 41) and dismissal of plaintiff's claims based upon 42 U.S.C. § 1981 against defendants Gay and McArdle are **DENIED**; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's claims based upon 42 U.S.C. § 1981 against the City is **GRANTED**; and it is further

**ORDERED** that defendants' motions for summary judgment (Dkt. No. 41) and dismissal of plaintiff's claims based upon 42 U.S.C. § 1981 against defendants Duval, Harrington and Rathbun are **GRANTED**; and it is further

**ORDERED** that defendants' motions for summary judgment (Dkt. No. 41) and dismissal of plaintiff's § 1983 claims arising under Equal Protection are **GRANTED**; and it is further

**ORDERED** that defendants' motions for summary judgment (Dkt. No. 41) and dismissal of plaintiff's § 1983 claims arising under the First Amendment are **GRANTED**; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's NYHRL claims for gender discrimination and hostile work environment as against all defendants are **GRANTED**; and it is further

**ORDERED** that defendants' motions for summary judgment (Dkt. No. 41) and dismissal of plaintiff's NYHRL claims for retaliation arising from eavesdropping on plaintiff's telephone conversations against the City, Gay and McArdle are **DENIED**; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 41) and dismissal of plaintiff's NYHRL claims for retaliation arising from eavesdropping on plaintiff's telephone conversations against Duval, Harrington and Rathbun are **GRANTED**.

**IT IS SO ORDERED.**

Date:  July 21, 2009

_____
Norman A. Mordue
Chief United States District Court Judge