**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SONIA DOTSON,**

               **Plaintiff,**

        **vs.**

**THE CITY OF SYRACUSE, THE CITY OF**
**SYRACUSE POLICE DEPARTMENT,**
**FORMER CHIEF OF POLICE DENNIS DUVAL,**
**SGT. TIMOTHY GAY, MARK McCARDLE[1],**
**PATRICK HARRINGTON, MICHAEL RATHBUN,**

             **Defendants.**
_____

**5:04-CV-1388**
**(NAM/GJD)**

**APPEARANCES:**

Bosman Law Office
258 E. Genesee Street
Utica, New York 13502
_Attorney for Plaintiff_

City of Syracuse Corporation Counsel
300 City Hall
Syracuse, New York 13202
_Attorneys for Defendants_

**OF COUNSEL:**

A.J. Bosman, Esq.

Rory A. McMahon, Esq.
Joseph Francis Bergh, Esq.

**Norman A. Mordue, Chief U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

      Plaintiff Sonia Dotson brought this employment action against defendants pursuant to 42

U.S.C. § 2000e _et seq_. ("Title VII"); 42 U.S.C. §§ 1981 and 1983; and the N.Y. Exec. Law § 296

("New York Human Rights Law" or "NYHRL").  After a five-day trial, a jury found that

defendants retaliated against plaintiff by requisitioning and listening to recordings of plaintiff's

---

[1] Defendant McCardle's name is misspelled in the caption.  The correct spelling is "McArdle".

telephone conversations after plaintiff made complaints about pornography in the workplace. The jury awarded plaintiff $175,000.00 in compensatory damages against the City of Syracuse; $125,000.00 in compensatory damages against defendant Timothy Gay; and $150,000.00 in compensatory damages against Mark McArdle.  On March 2, 2010, plaintiff filed a motion for attorneys' fees and costs. (Dkt. No. 118).  Defendants oppose the motion and cross move for the following relief: (1) judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure; or (2) a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure; or (3) an Order amending or altering the judgment and jury verdict for compensatory damages; and (4) a stay of enforcement of the judgment pursuant to Fed. R. Civ. P. 62(d). (Dkt. No. 122).

## BACKGROUND AND TRIAL TESTIMONY

Familiarity with the facts of this case is assumed based on this Court's previous Memorandum-Decision and Order. *Dotson v. The City of Syracuse, et. al.*, 04-CV-1388, Dkt. No. 61 (July 21, 2009).  Prior to trial, defendants filed a motion for summary judgment seeking dismissal of all plaintiff's claims.  The only causes of action to survive summary judgment were plaintiff's Title VII retaliation claims against the City based upon the act of eavesdropping on plaintiff's telephone conversations; plaintiff's NYHRL retaliation claims against the City, Gay and McArdle based upon the act of eavesdropping on plaintiff's telephone conversations; and plaintiff's § 1981 racial discrimination claim against McArdle and Gay.  The Court dismissed all causes of action against Duval, Harrington and Rathbun.

The evidence at trial established as follows: On August 30, 2000, plaintiff began working for the Syracuse City Police Department as a Civil Service Officer ("CSO").  On two occasions, between March 2003 and June 2003, plaintiff observed CSO Patrick Harrington viewing

pornographic movies on a laptop computer in the front desk area.[2]  At the time of the incidents, plaintiff did not complain to anyone within the Department, other than her husband, about the pornography.

On September 11, 2003, plaintiff was involved in a work-related automobile accident.  On September 12, 2003, plaintiff sought medical treatment for back pain.  Plaintiff's physician completed a "sick slip" that excused plaintiff from work for one day and recommended light duty for two weeks.   Plaintiff testified that she attempted to return to work on September 13, 2003, but she was "still sore".  Plaintiff called into work and asked another CSO to complete a "sick slip" for human resources.  Plaintiff was not scheduled to work on September 14th and 15th.[3]

On September 16, 2003, plaintiff returned to work on "light duty" and was assigned to the front information desk with Sergeant Timothy Gay.  While working at the front desk, plaintiff received a telephone call from Lieutenant Thomas Serrao.  Lt. Serrao questioned plaintiff regarding her absence from work on September 13, 2003.  Plaintiff testified that Lt. Serrao "asked" her to provide another note from her physician.  Sgt. Gay testified that he overheard plaintiff's portion of the conversation and believed that plaintiff was insubordinate to Lt. Serrao.

Shortly after plaintiff spoke with Lt. Serrao, plaintiff placed a telephone call to her husband, Lonnie Dotson, from the front desk.  Plaintiff testified that she told her husband that she, "didn't understand what Lt. Serrao wanted from [her]" and that "these guys kept messing with me".  Plaintiff stated that she was resentful because, "these guys were watching pornography and bringing in [] magazines and they were worried about a sick day.  I didn't get that []."

---

[2] In the prior Memorandum-Decision and Order, the Court noted, "[t]he record establishes that plaintiff saw pornography at the SPD on two occasions over a five or six month period."  This fact was not disputed at trial.

[3] Plaintiff described these days as "pass days".

Plaintiff also telephoned Sergeant Rutha DeJesus from the front desk telephone.  Plaintiff told Sgt. DeJesus about her conversation with Lt. Serrao and complained about pornographic movies and magazines in the workplace.  Sgt. DeJesus told plaintiff to file a complaint with the Equal Opportunity Officer, Lieutenant Rebecca Thompson.

Sgt. Gay admitted that he overheard plaintiff on the telephone with her husband and Sgt. DeJesus and described plaintiff as "very upset".  Sgt. Gay testified that he did not hear plaintiff complain "at all" about pornography and stated that there were portions of the conversations that were quiet and confined to the phone calls.

Shortly thereafter, Captain Mark McArdle called Sgt. Gay to his office.  Lt. Serrao was in Capt. McArdle's office when Sgt. Gay arrived.  Accordingly to Capt. McArdle, Sgt. Gay described plaintiff as "having a meltdown" at the front desk.  Capt. McArdle asked Sgt. Gay to obtain a memorandum from plaintiff documenting her medical absence.  Sgt. Gay testified that he attempted to obtain the memorandum from plaintiff but she refused to comply.  Capt. McArdle asked Sgt. Gay to bring plaintiff to his office to resolve the issue.  Capt. McArdle stated that he "counseled" plaintiff and told her she needed to follow departmental procedure.

Plaintiff and Sgt. Gay returned to the front desk area.  Sgt. Gay testified that plaintiff threw a memorandum over his shoulder.  Sgt. Gay returned to Capt. McArdle's office with the memorandum and "strongly recommended" that plaintiff be disciplined.  Capt. McArdle testified that he decided to investigate the issue to determine whether disciplinary action was appropriate. Therefore, Capt. McArdle asked Sgt. Gay to secure the recordings of plaintiff's telephone conversations with Lt. Serrao and any subsequent conversations "where plaintiff was upset". Capt. McArdle testified that when he gave Sgt. Gay that directive, he was not aware that plaintiff made any complaints regarding pornography in the workplace.  Capt. McArdle testified that Sgt.

4

Gay did not tell him that he overheard plaintiff saying she was going to make an EEOC complaint.       On September 16, 2003, Sgt. Gay left a message for Detective Rick Rioux in the "telecommunications management" department in an attempt to obtain the recordings.  On September 22, 2003, Det. Rioux contacted Sgt. Gay and asked him to complete an interdepartmental memorandum to memorialize his request.

At the relevant time, Deputy Chief Rebecca Thompson was a lieutenant in charge of the family services division and the EEOC Officer for the Department.  Dep. Chief Thompson testified that she received a complaint from plaintiff on September 23, 2003 regarding pornographic material in the workplace between March and June 2003.  Plaintiff complained that another CSO brought pornographic material to the front desk area and that it made her feel uncomfortable.

On September 24, 2003, Dep. Chief Thompson attempted to discuss plaintiff's complaint with Sgt. Gay and CSO Harrington but she was advised that they were both off duty until September 26, 2003.

On September 25, 2003, Sgt. Gay completed a memorandum as a "back up" to his oral request for his recordings and slid it under Detective Rioux's door.  On September 26, 2003, Sgt. Gay and Capt. McArdle obtained and listened to the tapes.   On September 26, 2003, Dep. Chief Thompson spoke with Capt. McArdle and Sgt. Gay about plaintiff's complaint.  Dep. Chief Thompson testified that she did not notify McArdle and Gay of plaintiff's complaint prior to that date.  Capt. McArdle and Sgt. Gay both testified that they were not aware that plaintiff filed a complaint with the EEOC until they spoke with Lt. Thompson on September 26, 2003.

On September 27, 2003, Capt. McArdle prepared a memorandum regarding plaintiff and suggested disciplinary action due to insubordination.   Capt. McArdle stated, "CSO Dotson

engaged in insubordinate behavior as a direct result of being questioned in regards to an unauthorized absence from duty on Sat 13 Sep '03."

In "September 2003", Sgt. DeJesus told plaintiff that defendants requisitioned and listened to her telephone conversations.

On October 16, 2003, plaintiff filed another EEOC complaint with Dep. Chief Thompson alleging she was being retaliated against as a result of filing her September 2003 complaint. Plaintiff did not provide any specific information or identify any incidents of retaliation. Plaintiff did not claim that the retaliation involved eavesdropping and plaintiff never told Lt. Thompson that defendants requisitioned and listened to her telephone calls. Plaintiff could not recall making any complaints regarding defendants actions involving her telephone calls.

At the conclusion of the trial, defendants moved for judgment as a matter of law seeking dismissal of plaintiff's remaining claims. The Court held that plaintiff failed to establish that she was discriminated against on the basis of race and dismissed plaintiff's § 1981 claims. The Court denied defendants' motion relating to plaintiff's retaliation claims as there were questions of fact for the jury.

**DEFENDANTS' MOTIONS**

**I.      RULE 50(B) MOTION OF JUDGMENT AS A MATTER OF LAW**

The standard governing a Rule 50 motion for judgment as a matter of law is well settled:

Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor. In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence.

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (internal

citations omitted).  Consequently, a court should not enter judgment as a matter of law unless:

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir. 1994) (quoting *Bauer v. Raymark Indus., Inc*., 849 F.2d 790, 792 (2d Cir. 1988) (internal quotation marks omitted)).

On a post-trial motion for judgment as a matter of law, the moving party must fulfill the procedural prerequisite of moving for judgment as a matter of law before the case was submitted to jury.  *See* Fed. R. Civ. P. 50(a)(2); *Slade v. Whiteco Corp.,* 811 F. Supp. 71, 73 (N.D.N.Y. 1993). A party may only make a post-judgment Rule 50(b) motion based on grounds specifically raised at the close of evidence.  *Lambert v. Genesee Hosp*., 10 F.3d 46, 53-54 (2d Cir.1993).  If the movant does not meet the Rule 50 specificity requirement, the Court may not grant judgment as a matter of law unless the result is "required to prevent manifest injustice."  *See Kuper v. Empire Blue Cross & Blue Shield*, 2003 WL 359462, at *4 (S.D.N.Y. 2003) (citing *Russo v. State of New York*, 672 F.2d 1014, 1022 (2d Cir. 1982)).

Here, at the close of the evidence, defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.   Defendants argued, *inter alia*, that plaintiff did not establish a *prima facie* case of retaliation because: (1) plaintiff did not engage in any protected activity prior to filing her complaint with the Lt. Thompson on September 23, 2003; (2) plaintiff did not suffer from any adverse employment action; and (3) plaintiff could not establish a causal connection between the filing of her EEOC complaint and the requisitioning/listening of her tapes. Defendants also argued that the evidence established a legitimate, non-retaliatory motive for their actions.  On the motion herein, defendants move for the same relief on the same grounds.  Thus,

the procedural requirements of Rule 50(b) have been satisfied.

**A.** *Prima Facie* **Case**

In order to establish a *prima facie* case of retaliation, a plaintiff must present evidence that would permit a rational trier of fact to find that: (1) she engaged in protected participation or opposition under Title VII; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-206 (2d Cir. 2006) (internal citations omitted).   In this context, an adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Ibok v. Secs. Indus. Automation Corp.*, 369 F.App'x 210, 213 (2d Cir. 2010) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).  Adverse employment actions are not defined "solely in terms of job termination or reduced wages and benefits, . . . less flagrant reprisals by employers may indeed be adverse." *Alston v. New York City Transit Auth.*, 14 F.Supp.2d 308, 311 (S.D.N.Y. 1998) (citing *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (adverse employment actions are not defined at all, but are left to the court's discretion to make determinations on a case by case basis)).  Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment action.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).  If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational fact finder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.  *See id.*   In this matter, the Court instructed the jury on the

elements of retaliation.  Defendants did not object to any portion of the Court's instructions.

Generally, trials involving claims of discrimination and retaliation require the jury to make assessments on the credibility of the witnesses.  *Tuszynski v. Innovative Servs., Inc.*, 2005 WL 221234, at *1 (W.D.N.Y. 2005).   The jury is empowered and capable of evaluating a witness' credibility and this evaluation should rarely be disturbed.  *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992).  Whether this Court would have made the same decision as the jury is not the issue.  *Tuszynski,* 2005 WL 221234, at *1 (citing *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983)).

### 1.    Protected Activity and Knowledge

Defendants claim that plaintiff's September 16, 2003 telephone conversations with her husband and Sgt. DeJesus were not "protected activities".  Specifically, defendants argue that plaintiff's complaints on September 16, 2003 were not made to any supervisor, manager or employee whose job it was to investigate and resolve such complaints.  Moreover, defendants claim that the evidence at trial did not establish that Capt. McArdle and Sgt. Gay were aware that plaintiff made any complaints on September 16, 2003.[4]  Conversely, plaintiff contends that her telephone conversation with Sgt. DeJesus constituted "protected activity" because Sgt. DeJesus was a supervisor.  Plaintiff cites to Sgt. Gay's testimony noting that he admitted that he overheard plaintiff on the telephone on September 16, 2003.  Thus, plaintiff argues that the jury was entitled to believe that Sgt. Gay overheard plaintiff complaining about pornography at that time and that he also overheard plaintiff indicate her intention to file an EEOC complaint.

Title VII's prohibition of retaliation extends not just to formal charges of discrimination,

---

[4] Plaintiff filed her EEOC complaint on September 23, 2003.  Gay and McArdle claim that they were not aware that plaintiff filed a complaint until Dep. Chief Thompson personally spoke with them on September 26, 2003.

but also to "informal protests, including making complaints to management . . ." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).   Protected activities can include "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges."  *Id*.  Congress sought to protect a wide range of activity, thus, an informal complaint to a supervisor can constitute a protected activity under Title VII.  *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc*., 957 F.2d 59, 65 (2d Cir.1992).  While a "mere question or comment does not rise to the level of being a protected activity", whether the "tone and manner of a question is sufficiently accusatory so as to put the defendants on notice that the plaintiff believed the defendants were discriminating against her, is a question for a jury to decide".  *DeAngelo v. Entenmann's, Inc.*, 2007 WL 4378159, at *3 (E.D.N.Y. 2007). Retaliation can be found where an individual denies knowledge of a plaintiff's protected activity, "so long as the jury finds that the **circumstances** evidence knowledge of the protected activities." *Cover v. Potter*, 2008 WL 4093043, at *3 (S.D.N.Y. 2008) (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (emphasis added)).

Here, drawing all reasonable inferences in plaintiff's favor and without weighing the credibility of the witnesses, the Court finds that the jury was presented with sufficient evidence to conclude that plaintiff engaged in a protected activity and that defendant was aware of that activity on September 16, 2003. Sgt. DeJesus testified that she was plaintiff's supervisor from 2001 to 2002.   After plaintiff accepted a new assignment, Sgt. DeJesus continued to ask plaintiff to work overtime for her. Sgt. DeJesus testified that on September 16, 2003, she found plaintiff

crying in the bathroom near the front desk area. Sgt. DeJesus testified that plaintiff complained that, "these guys watch porno movies". Sgt. DeJesus attempted to console plaintiff, left the bathroom and went to her office.  Upon arriving at her office, she received a telephone call from plaintiff.  Both plaintiff and Sgt. DeJesus testified that during that telephone conversation on September 16, 2003, they discussed pornography in the workplace and whether plaintiff should file an EEOC complaint with Lt. Thompson.  Based upon Sgt. DeJesus' position within the Syracuse Police Department, the jury could reasonably find that the telephone conversation between plaintiff (a CSO) and DeJesus (a sergeant) was sufficient to constitute a complaint to management.  *See Kotcher*, 957 F.2d 59, 65 (2d Cir. 1992) (holding that, "the evidence raise[d] strong suspicions about the circumstances surrounding [the plaintiff's] departure from the company and whether she was subjected to unlawful retaliation").

The evidence presented at trial also allowed the jury to reasonably conclude that defendants were aware, as early as September 16, 2003, of plaintiff's complaints about pornography to Sgt. DeJesus and further, that defendants were aware that plaintiff intended to file an EEOC complaint.  At trial, Sgt. Gay testified:

> Q.   And you heard her phone calls that she made after she was speaking - - after she spoke to Lt. Serrao?
>
> A.   Yes, ma'am.
>
> Q.   And do you recall what you heard?
>
> A.   A lot of loud profane language, she was very upset, got to understand I'm continuing to work at the same time, now I'm down one person so the calls are still coming in, people are still showing up, but she was very, very loud, very profane, I could clearly tell that she's speaking about Lt. Serrao and Kelly French.

11

> Q.      Okay.  Did she complain at all about pornography?
>
> A.      No, ma'am.

Upon cross examination, Sgt. Gay reiterated that he did not hear plaintiff complain about pornography on September 16, 2003:

> A.      . . . I didn't hear all of the conversations.  When I heard the loud profane language, I heard enough of her side of the conversation to reasonably know that she was speaking about the lieutenant and CSO Kelly French and her dissatisfaction with each of those people, but I was not sitting there listening to the entire conversation, I had business to attend to.  I was down one employee at that time and it continues to be busy but it was loud enough to hear.

Based upon the verdict, the jury clearly discredited Sgt. Gay's testimony and found that he did, in fact, overhear plaintiff complain about pornography or state her intention to file an EEOC complaint during the course of her telephone conversations on September 16, 2003.

At trial, Capt. McArdle testified regarding his involvement:

> Q.      Now you recall that Sonia Dotson made a complaint about pornography being viewed on the job in September of 2003, don't you?
>
> A.      Subsequent to this, to the 16th, yes.

Plaintiff's counsel then referred Capt. McArdle to his deposition testimony:

> Q.      Do you recall being asked this question and giving this answer in May of 2007, "Do you remember an incident in 2003 in which Ms. Dotson made a complaint with respect to officers watching pornography on the job?  "Answer: No."  Do you recall that question and giving that answer?
>
> A.      Yes.
>
> Q.      And is it your testimony today that now you recall her giving, making a complaint about pornography on the job?

12

A.     Yes, since reviewing my memo, yes.

Q.     So that even though you had been sued and were a defendant in the action in 2007, you didn't remember that my client had made a complaint about pornography on the job, is that your testimony?

A.     That's correct.

•     •     •

Q.     So today you remember it, but back then you didn't.  What about your memorandum, sir, your memorandum indicates that she said she was going to file an EEO complaint and she said that within earshot of the people around her?

A.     Yes.

Q.     How did you know that, sir?

A.     Because I listened to the tapes on the 26th or 27th of September.

From the verdict, it is clear that the jury found Capt. McArdle to be less than credible.

The jury did not accept Capt. McArdle's explanation and testimony that he did not know that

plaintiff complained about pornography before directing Sgt. Gay to acquire the tapes.  Plaintiff's

recorded telephone conversations were played for the jury.  Thus, the jurors were able to draw

their own conclusions regarding plaintiff's tone, volume and the substance of the telephone

conversations.  Whether Sgt. Gay and Capt. McArdle were believable or credible witnesses is not

for the Court to decide as it is solely the function of the jury to credit and resolve witness

testimony.  *See Francis v. City of New York*, 1999 WL 369955, at *3 (E.D.N.Y. 1999) (the court

would not disturb jury's finding for the plaintiff when the plaintiff testified that he overheard the

defendants making disparaging remarks and the defendants denied making such comments).

Considering the evidence and testimony from Sgt. DeJesus, Sgt. Gay and Capt. McArdle,

13

the jury could reasonably conclude that plaintiff engaged in a protected activity on September 16, 2003 when she complaint to Sgt. DeJesus about pornography and the possibility of filing an EEOC complaint.  Further, the jury reasonably concluded that defendants were aware of plaintiff's complaints on the same day.

### 2.    Adverse Action

Defendants argue that plaintiff did not suffer any adverse employment action because the evidence did not demonstrate that the requisitioning and listening to recorded telephone calls would dissuade a reasonable worker from making a complaint about pornography in the workplace.

In "early" October 2003, Sgt. DeJesus told plaintiff that defendants requisitioned recordings of her conversation.  As a result, plaintiff was "upset" and "embarrassed" and testified that she felt, "watched", "exposed" and "naked".  In the prior Memorandum-Decision and Order, this Court addressed the issue of whether this instance could constitute an adverse action.  This Court held:

> Viewing the evidence in a light most favorable to plaintiff, a reasonable fact finder could conclude that the requisition and monitoring of plaintiff's telephone conversations was intrusive and could have dissuaded plaintiff from filing a claim. *See Zakrzewska v. The New Sch.*, 2009 WL 252094, at *7 (S.D.N.Y. 2009) (holding that a jury would be entitled to conclude that monitoring of the plaintiff's computer usage would reasonably deter an employee from reporting harassment).

Defendants now attempt to distinguish the instant action from *Zakrewska* arguing that the monitoring in that case was done without the plaintiff's knowledge and only to the plaintiff. Here, defendants claim that plaintiff was not the only employee whose telephone conversations were monitored and moreover, plaintiff was aware that her calls were recorded.  In support of that

14

assertion, defendants cite to Det. Rioux's testimony. Det. Rioux testified that all telephone calls in the patrol front desk area were recorded and that he trained and advised the CSOs that all telephone calls are recorded for "conversations between yourself and citizens in the street". Plaintiff testified differently and stated that although she knew her telephone conversations were monitored for **business purposes,** she did not think that such monitoring extended to conversations between a husband and wife. The resolution of this issue involves an assessment of credibility. The jury was not compelled to believe Det. Rioux's testimony and clearly found plaintiff's version of events to be more credible. The Court will not disturb the jury's determinations regarding credibility. There was sufficient evidence from which the jury could reasonably conclude that the requisitioning and listening of plaintiff's telephone conversations constituted an adverse action that would dissuade a reasonable employee from filing a complaint.

### 3.     Causal Connection

Causation can be demonstrated "indirectly by showing that the protected activity was followed closely by discriminatory treatment, through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant". *De Cintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Plaintiffs who resort solely to temporal proximity in proving causation must demonstrate the existence of a time frame that is "very close". *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). There is no "bright line" to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship. *Id*.

Here, defendants argue that the element of causation has not been established because the "adverse activity" began before plaintiff engaged in protected activity. The Court disagrees. As

15

previously discussed, the jury found that plaintiff engaged in protected activity on September 16, 2003 when she complained about pornography over the telephone to Sgt. DeJesus. Defendants admittedly decided to requisition plaintiff's recordings on the same day. Due to the temporal proximity of the adverse action, the jury reasonably found a causal connection.

Based upon the aforementioned, the evidence at trial was sufficient to permit a reasonable jury to conclude that plaintiff established a *prima facie* cause of action for retaliation.

### B.       Legitimate, Non-retaliatory Reasons

Even assuming plaintiff established a *prima facie* case for retaliation, defendants argue that plaintiff's calls were requisitioned as part of an investigation into whether plaintiff was insubordinate. Defendants claim that the investigation began on September 16, 2003, prior to plaintiff's EEOC complaint about pornography.

Title VII is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993). Despite the fact that a defendant may proffer nonretaliatory justifications for their actions, a jury is entitled to weigh the evidence, credit the plaintiff's evidence, and find that the defendant's explanations for the actions were pretextual. *Fowler v. New York Transit Auth.*, 2001 WL 83228, at *7 (S.D.N.Y. 2001); *see also Graham v. Mahmood*, 2008 WL 1849167, at *7 (S.D.N.Y. 2008) (citing *Johnson v. Shovah*, 1998 WL 385972, at *2 (2d Cir. 1998) ("the question is whether defendants can show that the action[] would have been taken even in the absence of the improper reason")).

Here, Capt. McArdle testified that the investigation into whether plaintiff was insubordinate and should be disciplined commenced on September 16, 2003. On September 26,

2003, Capt. McArdle reviewed the audiotapes.  On September 27, 2003, Capt. McArdle drafted

proposed charges against plaintiff.  Capt. McArdle admitted that he did not advise plaintiff that

she was the target of potential disciplinary action.  Capt. McArdle testified as follows:

> Q.     Am I correct, Captain, that the city has to inform a CSE
> employee who are [sic] facing a possible disciplinary action
> and advise that they have the right to obtain or request union
> representation?
>
> A.     I - - no.
>
> •     •     •
>
> Q.     Handing you what's been marked as Exhibit D22.  Do you
> recognize that document, Captain?
>
> A.     This is a marked labor agreement, CSEA.
>
> Q.     Is it your understanding that that is a document that controls
> the employment terms and conditions of CSEA employees
> such as Sonia Dotson, a CSO?
>
> A.     Sure.
>
> •     •     •
>
> Q.     There's a star by some language, could you please read that to
> the jury?
>
> A.     "The city shall inform CSEA employees who are facing a
> possible disciplinary action that they have the right to request
> union representation".
>
> Q.     Am I correct that you didn't advise Sonia Dotson on the day
> that you interviewed her or after that she was the target of
> disciplinary action?
>
> A.     That's correct.
>
> Q.     What is the role of Judy Culeton with respect to discipline and
> CSEA employees?

17

> A.    CSE - - Judy Culeton, Captain Judy Culeton runs the human resources division, disciplinary actions on CSEA employees, CSO, who are still sworn personnel, are handled through the personnel division, human resources division, rather than the internal affairs division which handles any complaints or investigations against police officers.  That's how it's divvied up.
>
> Q.    Am I correct that you did not turn this matter over to Judy Culeton and instead filled out the disciplinary reports themselves?
>
> A.    What?
>
> Q.    Am I correct - -
>
> A.    Oh, no, yes, I filled them out.

Capt. McArdle also testified that plaintiff was not served with the disciplinary reports. Indeed, evidence was proffered establishing that plaintiff was never reprimanded and further, that CSO Harrington and Sgt. Gay were not reprimanded or disciplined for viewing pornography in the workplace.  *Cf. Sowemimo v. D.A.O.R. Sec., Inc.*,  2000 WL 546439, at *4 (S.D.N.Y. 2000) (citing *Alston*, 14 F.Supp.2d at 314) (explaining that evidence showing that a company disciplines employees who file discrimination complaints more harshly than those who do not file complaints proves retaliation).

While the need to conduct an investigation into plaintiff's actions may have been a legitimate reasons for requisitioning and listening to plaintiff's telephone conversations, from the evidence presented, it was reasonable for the jury to conclude that defendants' actions were, at least partially, motivated by retaliation.  *See Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *4 (E.D.N.Y. 2010) (holding that a reasonable juror could conclude that the defendant's investigation was superficial and its outcome was preordained).  The evidence did not

18

establish that defendants would have disciplined plaintiff "even if" they were not improperly motivated.  The jury weighed the evidence, assessed the credibility of the witnesses and found that defendants' explanation for their decision to requisition plaintiff's tapes was pretextual.  "The jury could have accepted defendants' version but chose not to do so."  *Fernandez v. N. Shore Orthopedic Surgery & Sports Med.*, 79 F.Supp.2d 197, 202 (E.D.N.Y. 2000).  Therefore, the Court will not disturb the verdict.

Having reviewed the record the Court cannot conclude that there is a "total absence of evidence" supporting the jury's verdict for plaintiff or that there is such an overwhelming amount of evidence in defendants' favor that a reasonable and fair minded jury could not have found against defendants.  Defendants have not met the burden of proving that the jury's verdict was based upon "surmise or conjecture".  *See Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005); *see also Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 879 (2d Cir. 1997).   Accordingly, defendants' motion for judgment as a matter of law is denied.

## II.      RULE 59 MOTION FOR A NEW TRIAL

Defendants move, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59 and Fed. R. Evid. 403.  Defendants argue that the Court's decision to allow evidence of pornography severely and unfairly prejudiced defendants.  Defendants claim that the trial was, "principally about pornography, not about the requisitioning and listening to tapes of plaintiff's recorded telephone calls".

Under Rule 59(a), a new trial may be granted even if there is substantial evidence supporting the jury's verdict.  In considering a motion for a new trial, the court is free to weigh the evidence independently and need not view it in the light most favorable to the verdict winner.

*See Manley v. Ambase Corp*., 337 F.3d 237, 244-45 (2d Cir. 2003).  A new trial is warranted if, "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Song v. Ives Labs., Inc*., 957 F.2d 1041, 1047 (2d Cir. 1992) (internal quotation marks omitted). The standard for granting such a motion is high and rulings on motions under Rule 59(a) "are committed to the sound discretion of the district court." *Severino v. Am. Airlines*, 2009 WL 1810014, at *2 (S.D.N.Y. 2009) (quoting, *inter alia*, *Sequa Corp. v. GBJ Corp*., 156 F.3d 136, 143 (2d Cir. 1998)).

Rule 403 of the Fed. R. Evid. states that relevant evidence may be excluded if its probative value is substantially outweighed by, *inter alia*, the danger of unfair prejudice to a party. *Peters v. MCI Telecomm. Corp*., 1989 WL 67220, at *3 (S.D.N.Y. 1989)  The District Court is provided with broad discretion in making decisions under Rule 403.  *Id*. (citing *Outley v. The City of New York*, 837 F.2d 589 (2d Cir. 1988)).  Rule 61 of the Fed.R.Civ.P. instructs that: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."  *Parrish v. Sollecito*, 280 F.Supp.2d 145, 165 (S.D.N.Y. 2003) (citing *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 104-05 (2d Cir.1995)).

To cure any potential prejudice that may result from the admission of evidence, the Court may render a "limiting instruction" to the jury.  *Tesser v. Bd. of Educ. of City Sch. Dist. of City of New York*, 190 F.Supp.2d 430, 442 (citing *Zafiro v. U.S.*, 506 U.S. 534, 540 (1993)). "Absent evidence to the contrary, we must presume that juries understand and abide by a district court's

limiting instructions." *U.S. v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002). The Second Circuit will review a district court's evidentiary rulings under a deferential abuse of discretion standard. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008) (citing *Old Chief v. U.S.*, 519 U.S. 172, 174 n. 1 (1997)); *see also Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000).

Here, the Court initially addressed the issue of whether testimony regarding pornography would be admissible at trial during motions in limine.  The Court ruled that plaintiff would be permitted to introduce evidence with regard to her complaints of pornography, subject to limitations:

> . . . the plaintiff is entitled, is permitted to introduce evidence with regard to prior complaints of pornography, dates of the plaintiff's complaints, the fact that she made the complaints, to whom she made the complaints and a general statement of the nature of the complaints and the outcome of the complaints.

The Court further explained that plaintiff could testify that she saw pornography, disapproved of what she saw and complained about pornography.  However, the Court cautioned counsel that the jury should not get "sidetracked" on the issue of whether the material was pornographic.  The Court specifically ruled that plaintiff could not introduce evidence regarding the merits of plaintiff's complaints as the hostile work environment claims were previously dismissed.

During the trial, testimony about the pornography was presented not only through plaintiff's witnesses but also from defendants' witnesses.  Throughout the trial, the Court repeatedly informed the jury that they were not to concern themselves with the issue of whether plaintiff's work environment was hostile.  The Court advised the jurors that the issue was whether defendants violated plaintiff's rights when they taped and listened to her conversations because

she made a complaint about pornography.  As such, the Court directed the jury to confine their

attention to the issue of whether plaintiff established that fact and whether plaintiff suffered

damages as a result of defendants' act of requisitioning and listening to plaintiff's taped

conversations.  After summations, the Court reiterated these directives and instructed the jury

that it could not consider whether pornography in the workplace created a hostile work

environment.  The Court stated:

> As I indicated to you during jury selection, this is a case in which
> plaintiff seeks to recover damages for alleged violations of one federal
> law Title VII of the Civil Rights Act, and one state law, that is, New
> York's Human Rights Law.   These laws prohibit retaliation by an
> employer against employees who complain of discrimination.
> Plaintiff claims that defendants retaliated against her when defendants
> requested and listened to plaintiff's telephone conversations because
> plaintiff complained of pornography in the workplace.  Defendants
> deny this allegation and assert that any employment decision was
> based on legitimate, non-retaliatory factors, specifically as part of an
> investigation into whether plaintiff was insubordinate.
>
> That is the issue before you.  The issue of whether plaintiff was treated
> differently because of her race or gender is not before you.  The issue
> of whether pornography in the workplace created a hostile working
> environment is not before you.

Defendants did not object to any portion of the jury instructions.  In support of the motion,

defendants offer only conclusory assertions that the jury's focus was principally on pornography.

Defendants do not cite to any specific portion of the trial transcript in support of that conclusion.

The Court has thoroughly reviewed the record and finds that any potential prejudice that may

have resulted from the admission of testimony regarding pornography was sufficiently cured with

the Court's repeated directives to the jury and the limiting instructions.  Defendants have failed to

prove that the admission of evidence related to plaintiff's complaints of pornography was an

abuse of the Court's discretion.  Thus, there is no basis to conclude that the jury reached a

seriously erroneous result or that the verdict was a miscarriage of justice.  Accordingly, defendants' motion for a new trial is denied.

## III.   REMITTITUR

In the alternative, defendants move to amend or alter the judgment and reduce the jury verdict for compensatory damages.  Defendants contend that plaintiff's evidence of damages demonstrated "very limited physical manifestations" and does not support a $450,000.00 award.  Rather, defendants claim that plaintiff's damages for emotional distress were "garden variety" and suggest a reduction to $10,000.00.

### A.   Legal Standard

"A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages", *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990), and is the process by which a court compels a plaintiff to chose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transp. Co., Inc*., 917 F.2d 1320, 1328 (2d Cir. 1990). "While it is properly within the province of the jury to calculate damages, there is 'an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable [persons] may differ, but a question of law.'" *Khan v. Hip Centralized Lab. Servs., Inc*., 2008 WL 4283348, at *6 (E.D.N.Y. 2008) (citations omitted). "[A] jury has broad discretion in measuring damages, but it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket".  *Id.* (citation omitted).

If a district court finds that a verdict is excessive, it may do one of the following: (1) order a new trial; (2) order a new trial limited to damages; or (3) condition denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. *Thorsen v. County of Nassau*, 2010

WL 2671816, at *11 (S.D.N.Y. 2010) (citing *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005)).  "It is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial." *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995) (citing *Vasbinder v. Scott*, 976 F.2d 118, 122 (2d Cir. 1992)).

A verdict is excessive if it "shocks the judicial conscience" and constitutes a denial of justice. *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003).  In determining whether the jury's verdict is excessive, a district court should apply the "least intrusive standard" possible, "namely, the maximum amount that would be upheld by the district court as not excessive." *Martinez v. Port Auth. of N.Y. and N.J.*, 445 F.3d 158, 160 (2d Cir.2006).  In determining what an appropriate damages award should be, a district court must look at awards granted in comparable cases. *DiSorbo,* 343 F.3d at 183.  "While no two cases are exactly alike, a comparison of other employment discrimination cases is instructive so as to determine whether the award []for emotional distress is so high as to 'shock the judicial conscience'". *Rainone v. Potter*, 388 F.Supp.2d 120, 122 (E.D.N.Y. 2005).  When reviewing the jury's verdict, courts should compare not only the plaintiff's injuries in similar cases, but also the severity of the adverse action. *Watson v. E.S. Sutton, Inc.,* 2005 WL 2170659, at *13 (S.D.N.Y. 2005).  In this analysis, the trial judge is free to weigh the evidence and "need not view it in the light most favorable to the verdict winner." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-35 (2d Cir. 2002) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998)).

"[I]t does not follow that simply because there was retaliation, there must be an award of compensatory damages; rather, the compensatory damages must be proven and not presumed."

24

*Fowler v. New York Transit Auth.*, 2001 WL 83228, at *10 (S.D.N.Y. 2001) (citing *McIntosh v. Irving Trust Co.*, 887 F.Supp. 662, 665 (S.D.N.Y.1995)).  The plaintiff must provide proof that she, "in fact suffered mental anguish or humiliation[.]"  *Id.* (citation omitted).  A plaintiff is not required to introduce medical or expert testimony as to her damages, however, the lack of such evidence must be considered by the Court in assessing the reasonableness of the award.  *Ginsburg v. Valhalla Anesthesia Assocs.*, 1997 WL 669870, at *2 (S.D.N.Y. 1997).  An award should be reduced if based upon, "sparse evidence with respect to the magnitude and duration of emotional injury or distress".  *Quinby v. WestLB AG*, 2008 WL 3826695, at *3 (S.D.N.Y. 2008).

In employment cases, there is a spectrum of awards for emotional damages ranging from "garden variety", to "significant", to "egregious" claims.  *See* Michelle Cucuzza, *Evaluating Emotional Distress Damage Awards to Promote Settlement of Employment Discrimination Claims in the Second Circuit*, 65 Brook. L. Rev. 393, 427-28 (1999)).

> In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration.
>
> Significant emotional distress claims differ from the garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses.
>
> Finally, egregious emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff. In significant or egregious cases, where there is typically evidence of debilitating and permanent alterations in lifestyle, larger damage awards may be warranted.

*Olsen v. County of Nassau*, 615 F.Supp.2d 35, 46-47 (E.D.N.Y. 2009) (internal citations and

quotation marks omitted).

Where emotional distress encompasses humiliation, shame, shock, moodiness and being upset but is devoid of any medical treatment or physical manifestation, it is considered to be "garden variety". *Gatti v. Cmty Action Agency of Greene County, Inc*., 263 F.Supp.2d 496, 512 (N.D.N.Y. 2003). "Garden variety" emotional distress claims generally merit $30,000 to $125,000 awards. *Olsen*, 615 F.Supp.2d at 46. For "significant" emotional distress, courts in this Circuit have routinely found that awards ranging from $100,000.00 to $500,000.00 are not excessive. *Thorsen*, 2010 WL 2671816, at *13 (reducing $1,500,000.00 award to $500,000.00 for "significant" damages evidenced by the plaintiff's testimony and the testimony of his treating psychologist regarding the plaintiff's hospitalization for a "major stress attack"). Egregious cases involve conduct that is either "outrageous or shocking" that significantly impacts on the plaintiff's physical health or results in "debilitating and permanent alterations in a lifestyle". *Khan*, 2008 WL 4283348, at *12 (citations omitted). In cases where juries awarded multi-hundred-thousand dollar verdicts, the plaintiffs established, with competent evidence, that they suffered and received treatment for severe emotional damages and further, that they were unable to work for extended periods of time. *Watson,* 2005 WL 2170659, at *15.

**B.      Plaintiff's Evidence of Damages at Trial**

At trial, plaintiff's evidence of emotional damages was presented through witness testimony only. Plaintiff testified that as a result of defendants' conduct, she felt, "watched, exposed, naked and embarrassed". Plaintiff testified:

> Q.      Now Sonia, following your filing of the complaint and the listening of you telephone calls can you tell the jury how that has affected you as a member of the Syracuse Police Department?

26

A.    It's affected me immensely. My relationship with my kids, my husband, with other officers, I feel like they're always watching me and judging me.

Q.    Are you currently taking any medication, Ms. Dotson?

A.    Yes.

Q.    What are you taking?

A.    I take Cymbalta.

Q.    And what is that for?

A.    It's an antidepressant.

Q.    Any of the events that you talked about with respect to them listening to your phone calls relate to that?

A.    Yes.

Q.    And when did you start taking that medication?

A.    November 2008, I believe.

Plaintiff did not seek treatment from any physician, psychologist or psychiatrist as a result of the retaliation.  Plaintiff did not present any testimony or evidence establishing any income related damages including lost time from work.  Plaintiff's husband, Lonnie Dotson, testified with respect to his wife's emotional state following the retaliation:

Q.    . . . Can you tell me how your wife was before these incidents [in September 2003] occurred?

A.    She was very energetic, you know, I'd come home and she's always ready and raring to go places, do things, very happy person.

Q.    Tell me what she was like after this.

A.    She definitely [sic] constantly crying, there would be times where I'd be speaking to her, you know, she'd be fine one

27

minute, I'd go away, come back, she'd be in tears and constantly sleeping, always tired, and she kind of distanced herself from myself and the children.

Q.     Can you talk about any specific incidents that occurred that gave you great concern?

A.     Yes.  On one occasion I - -

THE COURT: Can you give us a time, sir?

A.     Yeah, this was probably late 2003, and I came home and it was wintertime so it was either November, December, I had come home and Sonia wasn't downstairs.  I went upstairs and my door was barricaded shut.  I mean I couldn't open the door. When I pushed the door open, she had a chair up against the door, she was in bed with a golf club and a bat, there was a knife on the night stand.  You know, I looked at her, what's going on?  She had the phone next to her and she was afraid, she said she didn't trust the Syracuse Police Department.  And that hurt me also.

Sgt. DeJesus testified that when she told plaintiff that defendants listened to her telephone calls, plaintiff, "lost it", "broke down", cried and went to the bathroom to "throw up", and felt "betrayed".  Plaintiff did not present any expert medical testimony or evidence.  No other witnesses testified regarding plaintiff's emotional damages and no documentary evidence was offered or received.

C.     **Similar Cases**[5]

To properly evaluate the reasonableness of this jury award, the Court examines comparable cases with similar facts and evidence of injuries in Title VII and NYHRL retaliation actions within the Second Circuit.  Moreover, as this jury awarded a sizeable verdict, an examination of verdict awards in cases involving significant emotional damages is also essential

---

[5] The Court confines its analysis to factually similar cases, in the Second Circuit, within the last 10 years.

28

to the Court's remittitur analysis.

### 1.    Similar Facts and Evidence of Injury

In *Hiller v. County of Suffolk*, 199 F.R.D. 101 (E.D.N.Y. 2001), the plaintiffs commenced an action under Title VII and the NYHRL challenging an affirmative action program.  At trial, the plaintiffs testified that they experienced humiliation, stress, depression, anxiety and embarrassment.  *Id*.  The plaintiffs did not seek or receive psychiatric counseling.  *Id*.  The plaintiffs did not suffer any long term physical manifestations.  *Hiller*, 199 F.R.D. at 107.  After trial, the jury awarded each plaintiff $50,000.00 for emotional distress.  *Id*.  On the defendants' motion to reduce, the court reviewed similar employment discrimination cases with similar evidence of damages and found that, "courts consistently have reduced awards to substantially more modest amounts than those awarded here".  *Id*.  The court concluded that $20,000.00 was the maximum amount of damages that could be awarded for emotional distress, without shocking the judicial conscience. *Id.* at 108.

In *Fink v. City of New York*, 129 F.Supp.2d 511 (E.D.N.Y. 2001), the plaintiff allegedly suffered discrimination and retaliation.  The evidence of the plaintiff's emotional distress consisted of his testimony and the testimony of his wife regarding his "image"  *Id*. at 531. The plaintiff did not seek medical help and presented no medical evidence.  *Id*. The jury awarded the plaintiff $300,000.00 in damages for emotional distress.  *Id*.  On the defendants' motion for remittitur, the Court analyzed comparable cases and held that the plaintiff's, "symptoms were not as horrifying as some of those in the highest range of awards".  *Fink*, 129 F.Supp.2d at 538.  Accordingly, the Court held that an award of $125,000.00 would be the maximum that would compensate the plaintiff for his injuries.  *Id*.

29

In *Reiter v. Metro. Transp. Auth. of New York*, 2003 WL 22271223 (S.D.N.Y. 2003), the plaintiff claimed that he was subjected to retaliation after he filed a complaint with the EEOC. The plaintiff testified that he felt, "stressed, nervous, on edge and clammy" but admitted that he had no trouble eating or sleeping and never consulted a medical doctor and never sought psychological help.  *Id*. at *9.  The plaintiff did not lose his job or suffer any income related factors.  *Id*. at *10. A jury awarded the plaintiff $140,000.00 for emotional distress.  *Id*.  On review, the court described the plaintiff's injury, "in the low end of the spectrum of 'garden-variety'".  *Reiter*, 2003 WL 22271223, at *9.  The Court summarized:

> the plaintiff . . . did not detail the severity, duration, or consequences of his mental suffering, which were relatively minor on all fronts. The evidence of his mental injury is largely vague and conclusory testimony, without any evidence of medical treatment, and there are no signs that his demotion disrupted his family or personal life. Moreover, the plaintiff, while suffering some loss of status, retained a significant job at the same salary, which increased with standard raises to over $125,000. The jury award of $140,000 is plainly based on sympathy or speculation rather than dispassionate common sense.

*Id*. at *11 (internal citation omitted).  Accordingly, the Court granted the defendants' motion and reduced the award to $10,000.00.  *Id*.

In *Rainone v. Potter*, the plaintiff alleged that the defendants failed to promote him due to his gender and in retaliation for engaging in protected activities.  Rainone, 388 F.Supp.2d at 125. The plaintiff testified about his emotional state and claimed that his mind was "swimming", his "future looked extremely grim", and he developed sleeping problems and "other manifestations". *Id*.  The plaintiff's wife testified that he was depressed, had difficulty sleeping and was completely distraught and frustrated.  *Id*.  The jury awarded the plaintiff $175,000.00 for emotional distress.  On the defendants' motion to reduce the verdict, the Court compared the

plaintiff's emotional distress claims to similar cases and found that the plaintiff's case fell, "squarely in the low end of the 'significant' range". *Id*. at 126.  The court noted that although the plaintiff's testimony was corroborated by his wife, there was no evidence of physical manifestations of emotional distress or debilitating alterations in lifestyle, and no evidence of permanency. *Rainone*, 388 F.Supp.2d at 126.  Accordingly, the Court reduced the plaintiff's damages to $50,000.00, holding that the amount, "does not materially deviate from the sum that would be reasonable compensation for his emotional injuries". *Id*. at 126.

> ## 2. Cases involving "greater than garden variety" or "significant" emotional distress

As further guidance, the Court examined verdicts in retaliation cases where the courts categorized the plaintiff's injuries and damages as "greater than garden variety" or "significant". In those cases, the plaintiffs provided corroborating evidence with greater detail concerning the severity and duration of their emotional distress.  Nevertheless, the courts consistently reduced the jury verdicts for compensatory damages to amounts **far less** than the award herein.

In *Fowler v. New York City Transit Auth.,* plaintiff's  testimony regarding emotional damages was corroborated by his treating physician. *Fowler*, 2001 WL 83228 at, *14.  The evidence established that, as a result of the defendant's retaliatory conduct, the plaintiff lost time from work, was referred to a psychologist and developed physical impairments including low back pain, high blood pressure, headaches and stress.  *Id*.  On the defendants' motion to remit, the Court described the plaintiff's injuries as, "stronger than in the cases at the low end of the 'garden variety emotion distress' damage spectrum" and reduced the jury award from $50,000.00 to $25,000.00.  *Id*. at *14-15.

In *Shannon v. Fireman's Fund Ins. Co.*, 156 F.Supp.2d 279, 296-298 (S.D.N.Y. 2001), the

plaintiff testified that he was anxious, stressed and depressed and as a result, sought treatment from his physician who prescribed Ativan, an anti-anxiety medication. *Id*. The plaintiff also testified that as a result of his termination, he was unable to have sex, lost of interest in socializing and had trouble sleeping. *Id*. The plaintiff's wife corroborated his testimony. On the defendants' motion to remit, the Court held that while, "evidence that [the] plaintiff sought medical or psychiatric treatment generally entitles him to greater damages for mental anguish", the plaintiff's distress did not result in any physical manifestations. *Id*. Accordingly, the Court reduced the jury award from $80,000.00 to $40,000.00. *Shannon*, 156 F.Supp.2d at 298.

In *McGrory v. City of New York*, 2004 WL 2290898 (S.D.N.Y. 2005), the jury awarded the plaintiff $533,390.00 in compensatory damages for mental pain and suffering. The plaintiff presented evidence of his emotional distress through the testimony of several witnesses, including his psychiatrist. *Id*. at 15. The Court noted that the plaintiff's damages did not, "fit easily into either end of the damages continuum" but concluded that the plaintiff established "far more than garden variety". On the defendants' motion, the Court reduced the jury award to $100,000. *Id*. (citations omitted).

In *Khan v. HIP Centralized Lab. Servs.*, the plaintiff presented credible evidence that his employer's actions limited his life activities and resulted in his doctor prescribing anti-depressant medication. *Khan*, 2008 WL 4283348, at *12. The plaintiff's testimony was corroborated by his treating psychiatrist and the plaintiff submitted medical records. On the defendant's motion to reduce the verdict, Judge Trager held that the plaintiff's case was not "egregious" because it did not involve "outrageous and shocking" discriminatory conduct or a significant impact on the plaintiff's physical health. The Court reduced the verdict from $200,000.00 in compensatory

32

damages to $50,000.00.  *Id*. (citations omitted).

In *Ruhling v. Newsday, Inc.*, 2008 WL 2065811, at *8 (E.D.N.Y. 2008), the jury awarded the plaintiff $100,000.00 for compensatory damages.  The evidence of the plaintiff's emotional distress was not limited to the plaintiff's testimony but was corroborated by the testimony of her physical therapist and physician who testified concerning the severity, duration and aggravation of the plaintiff's physical manifestations and emotional distress.  *Id.*  Accordingly, the Court held that the plaintiff's damages were more than "garden variety" but  found that an award of $50,000.00 was more in line with relevant case law.  *Id*. at *9 (collecting cases).

**D.     Plaintiff's cases**

In opposition to defendants' motion, plaintiff cites to several allegedly "comparable cases" including three recent cases within the Northern District.  Upon review, the Court concludes that the facts and verdicts of those cases are notably distinguishable and inapposite.

In *Olsen v. County of Nassau*, the plaintiff asserted  disparate treatment and retaliation claims.  *Olsen*, 615 F.Supp.2d at 38. The jury awarded the plaintiffs damages for emotional injuries as follows:  $500,000.00 (Olsen); $400,000.00 (Ketcham); and $100,000.00 (Cribbin) for emotional damages.  The plaintiffs' testimony regarding emotional damages was corroborated by their treating physicians' testimony.  Moreover, the plaintiffs submitted undisputed evidence that they sought medical treatment, psychological treatment and received prescription medication.

In *Marchisotto v. City of New York*, 2007 WL 1098678, at *10 (S.D.N.Y. 2007), the jury awarded the plaintiff $300,000.00 in compensatory damages finding that the defendants retaliated against the plaintiff after he complained of sexual harassment.  As a result of the defendant's conduct, the plaintiff testified that he was unable to perform sexually and suffered from insomnia.

The plaintiff also produced uncontroverted evidence that he suffered from significant physical and emotional stress which altered his lifestyle.  The plaintiff's treating psychiatrist and psychologist testified that the plaintiff suffered from posttraumatic stress disorder and major depressive disorder.

In *Phillips v. Bowen*, 278 F.3d 103 (2d Cir. 2002), the Second Circuit declined to reverse the district court's determination that a jury award of $400,000.00 was a fair assessment of damages.  The jury found that the defendants, the plaintiff's supervisors, retaliated against the plaintiff after she exercised her First Amendment rights.  *Id.* at 108. The plaintiff, her co-workers and boyfriend testified that the plaintiff suffered ongoing harassment for five years resulting in emotional distress, physical illness and effects on her relationship and lifestyle. *Id.* at 110-112.  Moreover, the court noted that the defendants testified, "unapologetically" about their treatment of the plaintiff finding that, "the defendants' animosity permeated plaintiff's work environment and their actions directly and adversely affected her daily working conditions in a substantial way".  *Id.*

Plaintiff cites to *Osorio v. Source Enter., Inc.*, 2007 WL 683985 (S.D.N.Y. 2007) and *Port Auth. Police Asian Jade Society of New York and New Jersey v. Port Auth. of New York and New Jersey*, 681 F.Supp.2d 456 (S.D.N.Y. 2010), as  "comparable cases" but both cases are factually and legally inapposite.  *Osorio* involved a jury award for $3,500,000.00 for damages to the plaintiff's reputation in the hip-hop industry following the publication of a defamatory statement.  Similarly, the *Port Auth* case did not involve retaliation.  Rather, a jury found that the defendants engaged in a pattern of intentional discrimination resulting in a disparate impact upon Asian-American police officers.  The Court refused to remit the $250,000 jury award for compensatory

damages holding that, "competent evidence is not limited to medical evidence; the award should be considered in light of the 'circumstances of the violation itself'". *Port Auth.* 681 F.Supp.2d at 470.

Plaintiff also argues that this case, "falls comfortably in line with other recent verdicts in the Northern District" and cites *Lee v. City of Syracuse,* Dkt. No. 5:03-CV-1329; *Bergerson v. New York State Off. of Mental Health, Central N.Y. Psychiatric Ctr.* (Dkt. No. 6:06-CV-1476); and *Lore v. City of Syracuse* (Dkt. No. 5:00-CV-1833).  In all three of the aforementioned cases, the plaintiffs were represented by Ms. Bosman and after favorable jury verdicts for the plaintiffs, the defendants filed post trial motions.[6]

In *Lee,* the plaintiff alleged that the defendants discriminated and retaliated against her in violation of Title VII and NYHRL.  At trial, the plaintiff produced evidence that she lost seven vacation days and was not allowed to carry her weapon.  The plaintiff's treating psychiatrist and mother offered testimony regarding the plaintiff's emotional state.  The jury also viewed photographs of injuries the plaintiff sustained as a result of a domestic violence incident involving her boyfriend, a Syracuse City Police Officer.  The jury heard testimony from the officer who responded to the scene of the assault and the assault was discussed during counsel's closing arguments. The jury returned a verdict in the amount of $650,000.00 including of $300,000.00 for compensatory damages for emotional distress, $300,000.00 for "harm to reputation" and $50,000.00 for economic damages.  The Court, after reserving its decision on defendants' motion for a directed verdict, granted the motion, in part, and reduced the plaintiff's award to $400,000.00. (Dkt. Nos. 184, 188) (March 23, 2010).

---

[6] The decisions on the defendants' motions for remittitur are unreported.

35

In *Lore*, the plaintiff asserted Title VII and NYHRL discrimination claims, hostile work environment claims and retaliation claims against the City of Syracuse.  During trial, the plaintiff and her mother testified about the plaintiff's emotional difficulties.  The plaintiff also presented medical records from her treating physician and evidence that she took anti-depressants after she was terminated.   The plaintiff was awarded $150,000.00 in damages for emotional distress and $100,000.00 in damages "harm to reputation" after a jury found that the defendants retaliated against the plaintiff.[7]  On the defendants' motion for remittitur, the court held that the award was "fair and reasonable, and did not shock the conscience".  (Dkt. No. 309) (August 7, 2009).

In *Bergerson*, the jury awarded the plaintiff $580,000.00 in damages in a Title VII action involving racial discrimination and hostile work environment claims.  The verdict included $30,000.00 for emotional distress and $100,000.00 for harm to the plaintiff's reputation as a result of racial discrimination and $200,000.00 for emotional distress and $250,000.00 for harm to the plaintiff's reputation as a result of being subjected to a hostile work environment.  The defendants moved to amend the verdict arguing that the plaintiff did not provide corroborating evidence of her claims of emotional distress.  The court reduced the jury's damages to $300,000.00 due to the statutory cap.  (Dkt. No. 66) (November 25, 2009).

**E.     Application of Legal Standard and Comparable Cases to Facts at Hand**

The evidence at trial failed to establish that plaintiff suffered any permanent emotional injuries, debilitation, physical manifestations or alterations to her lifestyle.  Plaintiff's testimony and evidence regarding her damages was brief, conclusory and vague.  Plaintiff provided no

---

[7] The jury found that defendant City Corporation Counsel Rick Guy retaliated against the plaintiff and awarded plaintiff $250,000 in damages as a result.  However, the jury also found that Rick Guy was entitled to the defense of qualified immunity.

36

testimony regarding the duration or consequences of her alleged injuries.  Plaintiff did not receive any medical or psychological treatment for her alleged emotional injuries as a result of the retaliation.  No experts testified and no medical records were offered or received as evidence to support her claim.  As a result of the retaliation, plaintiff claimed that she took Cymbalta, however, she admittedly did not begin taking the medication until five years after the retaliation occurred.  Moreover, plaintiff's testimony regarding Cymbalta was not corroborated and plaintiff failed to offer any medical documentation or testimony regarding why she began taking the medication, how long she took the medication, whether it was prescribed by a physician or how she obtained the medication and/or prescription.

Plaintiff's husband testified about his wife's emotional state claiming that she was "constantly crying, sleeping and distant".  Mr. Dotson also testified about an "incident that gave him great concern" in late 2003.  Mr. Dotson's testimony was not corroborated by plaintiff.  Plaintiff did not testify that she was depressed or that she had trouble sleeping.  Moreover, the incident involving the golf club and bat allegedly occurred once and plaintiff did not mention this incident during her testimony.

Plaintiff presented no evidence regarding any economic loss including lost time from work or any other income related damages.  Plaintiff did not establish that she suffered any change in her job duties or schedule as a result of the retaliatory action.  Plaintiff has three children and did not testify that the retaliation caused any disruption in her family or personal life.[8]  Due to the nature of plaintiff's evidence regarding her damages and the lack of any corroborating proof, her claims can only be described as "garden variety", at best.  Even if the

---

[8] Plaintiff's children did not testify at trial.

Court categorized plaintiff's injuries as "significant", the $450,000.00 award would still be considered excessive.  As the previously cited caselaw dictates, verdicts of this magnitude are generally reserved for "egregious" cases.  Here, plaintiff did not establish, nor did she even allege, that she suffered any significant impact upon her physical health or lifestyle.

Moreover, even assuming plaintiff produced evidence regarding damages, the proof at trial did not demonstrate that defendants' conduct was "outrageous" or "shockingly discriminatory" sufficient to warrant such a sizeable award.  The retaliatory conduct was not ongoing or continuous nor was it a "pattern of conduct".  Indeed, the evidence established that the retaliatory act - eavesdropping on one of plaintiff's recorded telephone conversation - was an isolated instance.  Moreover, plaintiff presented no evidence which would permit a reasonable jury to conclude that she was "shocked" or "outraged" by defendants' conduct.  Plaintiff never complained to anyone at the Syracuse Police Department about the eavesdropping.  At trial, Sgt. DeJesus testified that she told plaintiff in "September 2003", that defendants requisitioned and listened to her telephone conversations.   On October 16, 2003, plaintiff filed a second EEOC complaint and failed to even mention the eavesdropping issue.[9]  Moreover, while plaintiff claims that she felt "watched, naked and exposed" as a result of the eavesdropping, the evidence established that plaintiff was clearly aware that her telephone conversations at the front information desk were recorded.  Based upon the evidence, the circumstances surrounding defendants' retaliatory conduct were not so outrageous as to warrant a nearly half-million dollar

---

[9] Plaintiff's October 16, 2003 EEOC complaint to Lieutenant Thompson was entitled "Hostile work environment, racism, sexism" and included complaints that "some employees of the S.P.D. already knew what was going on","treat me like I have a communicable disease" and "no longer speak to me or speak to me as little as possible". Further, plaintiff claims that she received a memo from Lt. Culeton regarding medical usage time in retaliation for filing her previous 10.1.

verdict.

The Court is not persuaded by the decisions in the caselaw cited by plaintiff. Plaintiff's reliance upon those cases, as support for the jury's verdict herein, is misplaced. Those cases are readily distinguishable and, in fact, support remittitur of this matter. In each case, there was corroborating evidence supporting the plaintiff's testimony of greater emotional damages or more egregious conduct by the defendants. Nevertheless, in each of those cases, the jury awards for compensatory damages for emotional distress were far less than the award herein. Here, plaintiff did not present any evidence of emotional or physical damage, loss of time from work or any other monetary damages. Moreover, the retaliation that plaintiff suffered was a one-time occurrence, not ongoing or continuous. The decisions in the cases cited by plaintiff actually support the conclusion that this $450,000.00 verdict "shocks the judicial conscience" and should be reduced.

It was unreasonable for the jury to award plaintiff nearly half of a million dollars because plaintiff suffered alleged and unsubstantiated "damages" due to defendants eavesdropping on one telephone conversation when the record established that plaintiff knew that her telephone conversations were being recorded. Applying the "least intrusive standard", $50,000.00 is the maximum amount that would compensate plaintiff for her injuries without being excessive. Accepting Judge Trager's analysis and conclusions in *Khan*, this Court finds that defendants' conduct was not "outrageous and shocking" nor did it result in any significant impact upon plaintiff's health. Based upon the record, a new trial will be held on the issue of compensatory damages unless plaintiff accepts an award of compensatory damages of $50,000.00.

Defendants' motion to remit is GRANTED.

39

## IV.  Rule 62(d)

Defendants move to stay enforcement of the judgment pending the outcome of the appeal pursuant to Fed. R. Civ. P. 62(d).  Defendants ask the Court to set the amount of the supersedeas bond.  Plaintiff has not filed any opposition to defendants' request for a stay.

Rule 62(d) provides, in pertinent part:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond. The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d). In cases where the judgment is for a sum of money only, Local Rule 67.1 of the Northern District of New York provides that a supersedeas bond be posted "in the amount of the judgment plus 11% to cover interest and any damage for delay as may be awarded, plus $250 to cover costs." N.D.N.Y.L.R. 67.1 (2010).  "The burden is on the moving party to 'objectively demonstrate' the reasons why the court should 'depart from the usual requirement of a full security supersedeas bond' . . ."  *Port Chester Elec. Constr. Corp. v. HBE Corp.*, 1991 WL 258737, at *2 (S.D.N.Y. 1991) (citing *Poplar Grove, etc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189 (5th Cir. 1979)).

Here, defendants seek an Order permitting them to post a bond in an amount less than the judgement herein.  On February 16, 2010, judgment was entered in favor of plaintiff for $450,000.00, the amount of the total jury verdict.  Defendants present no argument in support of their request to deviate from the judgment amount.  Defendants have not met their burden of establishing why the Court should order a departure from this District's Local Rules and usual requirements for a supersedeas bond.  Defendants application for a stay is granted subject to defendants posting a supersedeas bond in the amount of the original jury verdict and in

40

accordance with Fed. R. Civ. P. 62(d) and the Local Rules of the Northern District.[10]  *See Ragona v. Wal-Mart Stores, Inc.*, 1999 WL 993712, at \*2 (N.D.N.Y. 1999).

### PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff seeks to recover attorneys' fees in the amount of $118,049.50 for services rendered by A.J. Bosman's office and $27,500.00 for services rendered by Norman Deep, Esq., pursuant to Fed. R. Civ. P. 54(d).  In addition, plaintiff seeks to recover $5,331.38 in costs and expenses.  Defendants oppose plaintiff's request.

Title VII provides that, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of costs." *Bonner v. Guccione*, 178 F.3d 581, 593 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(k)).  In determining reasonable attorney's fees, the district court must calculate a "lodestar" figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate.  *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (citations omitted).  The Court has, "discretion in determining the amount of a fee award," and must use that discretion to make "its own assessment of what is appropriate[.]"  *Luca v. County of Nassau*, 698 F.Supp.2d 296, 306 (E.D.N.Y. 2010) (internal citations omitted) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

**A.      Number of Hours**

Plaintiff requests a fee award representing approximately 566.98 hours of work by A.J. Bosman (including 16 hours for travel and approximately 123.75 paralegal hours) and 105 hours of work performed by Norman Deep (95 for legal services and 10 for travel).  In support, plaintiff

---

[10] Defendants are required to provide a detailed calculation of the amount of the bond including interest and statutory costs pursuant to the Local Rules.

41

provided billing records from both Ms. Bosman and Mr. Deep. Defendants specifically object to 64 entries in Ms. Bosman's billing records claiming that the hours are excessive, redundant, lack explanation or were otherwise unnecessary. Defendants also object to reimbursing plaintiff for attorney travel arguing that plaintiff could have retained competent counsel in Syracuse and defendants take exception to plaintiff's request for attorneys' fees for "secretarial work".

### 1.   Vagueness

Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). Where descriptions of work done are vague and ambiguous, the Court cannot assess the reasonableness of the entries. Thus, the fees for such work can be eliminated or reduced. *Baim v. Notto*, 316 F.Supp.2d 113, 122 (N.D.N.Y. 2003) (citing *F.H. Krear & Co. v. Nineteen Named Tr.*, 810 F.2d 1250, 1265 (2d Cir.1987)). "[M]ere characterization of the type of work done, without specifying the purpose and specific subject matter of the task", are insufficient. *Parrish v. Sollecito*, 280 F.Supp.2d at 171. Descriptions of work such as "review of file", "review of documents" and "review of letters" are vague and do not permit a court to evaluate the reasonableness of the services. *See Ayers v. SGS Control Servs., Inc*., 2008 WL 4185813, at *7 (S.D.N.Y. 2008); *see also Cosgrove,* 1996 WL 99390, at *3.

With regard to Ms. Bosman's hours, while some of the individual entries lack specificity and detail, the Court finds that such entries, when considered in the context of the entire billing summary, generally establish the subject matter of the work performed. *See Cover*, 2008 WL 4093043, at *7 (citing *Bridges v. Eastman Kodak*, 1996 WL 47304, at *4 (S.D.N.Y. 1996)

42

(declining to reduce the presumptively reasonable fee amount, notwithstanding occasional vague descriptions of work, as the records, overall, indicated reasonableness of each task and time expended)).  Ms. Bosman's entries are sufficiently specific to determine the nature of the work performed.

The Court does not reach the same conclusion with respect to Mr. Deep's records.  Mr. Deep's statement of legal services is one and a half pages in length and contains descriptions of work performed such as : "file review"; "trial preparation" and "meetings".   All of the entries are vague and do not provide any information regarding what was reviewed, what type of "preparation" was performed for trial or what was discussed during the various meetings with counsel and witnesses.  Thus, the entries do not permit this court to conduct a meaningful review as to whether the time was reasonable or appropriate.  *See Marshall v. State of New York Div. of State Police*, 31 F.Supp.2d 100, 106 (N.D.N.Y. 1998) (holding that the vague description of "prepare for trial" in time records does not adequately inform the Court of the nature and extent of the work performed and therefore provides an inadequate basis to determine the reasonableness of the claimed hours).  For this reason, a reduction in Mr. Deep's hours is warranted.

**2.      Excessiveness**

Both Ms. Bosman and Mr. Deep's entries are excessive to some degree.  For example, Mr. Deep expended 13 hours for "discussions" and "meetings" with Ms. Bosman. Generally, conferences between counsel are excessive entries, *Rozell v. Ross-Holst*, 576 F.Supp.2d 527, 541 (S.D.N.Y. 2008), and where the records reveal a number of conferences between trial counsel, "there is an element of duplication of effort".  *Simmonds v. New York City Dep't of Corrs.*, 2008 WL 4303474, at *6 (S.D.N.Y. 2008).   Moreover, Ms. Bosman expended an extraordinary amount

43

of time opposing defendants' motion for summary judgment.  In her affidavit in support of the motion for fees, Ms. Bosman describes her expertise in the area of civil litigation.  In fact, Ms. Bosman emphasizes her experience, reputation and ability in her request for hourly rates of $225 and $275.  Yet, Ms. Bosman expended approximately 115.30 hours to review and prepare plaintiff's opposition to defendants' summary judgment motion.  Plaintiff's counsel is essentially claiming that she expended approximately three 40-hour work weeks to draft opposition to a motion for summary judgment when all that was necessary to defeat the motion, assuming plaintiff had a meritorious case, was to demonstrate a question of fact.  Given Ms. Bosman's professional level of expertise, these amounts are "outside of the range for similar matters litigated by counsel of similar experience".  *Cover*, 2008 WL 4093043, at *7 (counsel sought 42.25 hours for a post trial motion and 87.25 hours for the plaintiff's summary judgment motion) (citing *Weingarten v. Optima Commc'n Sys., Inc*., 544 F.Supp.2d 193 (S.D.N.Y. 2008) (internal citation omitted)).  As such, a reduction is warranted.

### 3.      Duplicative

"The use of multiple attorneys [ ] is not unreasonable per se. " *Handschu v. Special Servs. Div*., 2010 WL 2991414, at *11 (S.D.N.Y. 2010) (citing *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp*., 599 F.Supp. 509, 518 (S.D.N.Y. 1984)).  "A trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks . . . on the basis of [the court's] assessment of what is appropriate for the scope and complexity of the particular litigation".  *Simmonds*, 2008 WL 4303474, at *6 (citing *New York State Ass'n,* 711 F.2d at 1146-48.  It is within the discretion of the district court to determine whether the actual time expended by an additional attorney was reasonable.  *Luciano*, 109 F.3d at 117.

Plaintiff has not established the need for an additional attorney.  Mr. Deep has not provided his resume or an affidavit attesting to his billing entries or documenting his experience. Thus, the Court has no information with regard to his expertise in the issues presented herein. Moreover, this litigation began in December 2004, however, Mr. Deep did not appear as co-counsel for plaintiff until January 9, 2010 (one month before trial).  It is not clear to the Court why Mr. Deep became involved at that stage of the litigation since his role during trial was extremely limited.  Mr. Deep did not deliver plaintiff's opening statement or closing argument and questioned only three of the sixteen witnesses.  Ms. Bosman presented all arguments during side-bar conferences, all offers of proof outside the presence of the jury and all of plaintiff's arguments on motions in limine and post trial motions.  Plaintiff has not provided sufficient support to satisfy her burden of proving that Mr. Deep's services were necessary and reasonable. For this reason, it is appropriate to reduce the fees associated with Mr. Deep's representation.  *See Robinson v. City of New York*, 2009 WL 3109846, at * 8 (S.D.N.Y. 2009) (at trial, lead counsel conducted the majority of the questioning of witnesses and colloquy with the Court; while co-counsel argued the legal points not addressed by the lead).

### 4.        Unjustified/Unnecessary

As discussed previously, the Court awarded defendants summary judgment on the majority of plaintiff's claims.  Plaintiff case was pared down to one act of retaliation (out of seven alleged) and § 1981 claims of racial discrimination.  After the Court's decision, plaintiff's counsel continued to present arguments and motions demonstrating counsel's belief that the discrimination claims and the existence of pornography in the workplace, which related to a hostile work environment claims, were more likely to generate the most response from a jury.

45

This was evident by counsel's attempt to introduce evidence at trial relating to her gender discrimination and hostile work environment claims.  For example, plaintiff attempted to testify that she heard that another officer was called a whore because she wanted to collect child support and, "get pregnant by different captains".  After an offer of proof, the Court held that the instance did not involve the defendants herein and therefore, that testimony was excluded.  Counsel's attempt to introduce previously excluded evidence is further established by the fact that plaintiff's counsel expended several hours preparing non-party witnesses to testify at trial.  Plaintiff sought to call these witnesses claiming they were allegedly "similarly situated" to plaintiff in an attempt to introduce evidence of a discriminatory pattern at the Syracuse Police Department.  Prior to trial, defendants moved to preclude these witnesses.  The Court held:

> Plaintiff has not established that the proposed witnesses were similarly situated employees, indeed only four of the proposed witnesses are SPD police officers.  Moreover, plaintiff has not established that the witnesses will testify regarding actions that involve eavesdropping on telephone conversations, and I'm reserving decision on this issue so that the motion may be placed in an appropriate factual context and I'm going to have plaintiff make an offer of proof before she goes to question witnesses regarding those issues.  That will be outside the presence of the jury.

The Court describe specific parameters and advised counsel that only "similarly situated" non-party witnesses who were able to discuss eavesdropping would be permitted to testify.  Despite this ruling, during trial, plaintiff's counsel attempted to introduce testimony from Theresa Lore, Michael Long, James Libertore, Katherine Lee, Kim Calverese, Stephanie Irving-Linton and Vanessa Hasty.  After offers of proof, the Court denied plaintiff's applications and held that the proposed witnesses had no knowledge of the specific instance of retaliation at issue during the trial.  Further, the Court noted that the time frames were different and the acts of retaliation are

different and are not similar.  In some respects, the Court noted that the only thing the witnesses had in common with plaintiff was that they are female and filed EEOC complaints.

### 5.    Clerical/Paralegal Work

Defendants argue that plaintiff should not recover attorneys fees for secretarial hours including time for routine telephone calls, adjournment letters and correspondence between non-attorneys.  While courts generally hold that "clerical and secretarial services are part of overhead and are not generally charged to clients", tasks that are more akin to paralegal work will be permitted.  *Guardado v. Precision Fin., Inc.*, 2008 WL 822105, at *6 (E.D.N.Y. 2008) (internal citation omitted).  Clerical tasks such as organizing case files and preparing documents for mailing are not compensable.  However, paralegal tasks such as the selection and redaction of trial exhibits and preparation of trial exhibits and witness binders are compensable.  *See Rozell*, 576 F.Supp.2d at 541.

Here, the hours in question were expended both by Ms. Bosman and by Ms. Bosman's paralegal.  The entries include correspondence and telephone calls with the client, witnesses and the Court.  The telephone calls do not include a description of the sum and substance of the conversation and the tasks are vague.  Other entries describe activity as "file maintenance", "assemble and copy motion"; and "organize and update file".  The entries could be construed as both administrative and clerical.  Based upon the duplication of efforts and lack of specificity in the descriptions of the work performed, the court will make an adjustment for Ms. Bosman's entries and the paralegal entries for these hours.

### 6.    Travel Time

Defendants object to compensating plaintiff for travel time for two attorneys and a

paralegal for trial.  Defendants argue that a client would not agree to pay travel expenses for attorneys from Oneida County where there is competent counsel in Onondaga County. Defendants offer no caselaw in support of this argument.  Consistent with Northern District precedent, the Court will allow reimbursement for travel time but only at a one-half of counsel's hourly rate.  *See O'Grady v. Mohawk Finishing Prod., Inc*., 1999 WL 30988, at *6 (N.D.N.Y. 1999).

### 7.    Reduction of Hours

"In lieu of making minute adjustments to individual entries", the court should deduct any hours for work that was "excessive, redundant or otherwise unnecessary utilizing an across-the-board percentage cuts in the number of hours claimed".  *Olsen*, 2010 WL 376642, at *5 (citing *Luciano*, 109 F.3d at 117); *see also Guardado*, 2008 WL 822105, at *7 (citing *In re Agent Orange Prod. Liab. Litig*., 818 F.2d 226, 237 (2d Cir. 1987)).

The court has conducted an intensive examination of the invoices submitted by plaintiff's counsels.  For the aforementioned reasons, the court reduces the hours for legal services rendered by Ms. Bosman by 20%, paralegal services by 20% and hours for services rendered by Mr. Deep by 40%.

### B.    Hourly Rate

Plaintiff's counsels seek compensation at a rate of $275.00 per hour for legal services due to, "the inherent and increasing difficulty in prosecuting lawsuits of this nature".  Counsel also seeks compensation for paralegal time at a rate of $100.00 to $150.00 per hour.  Defendants argue that this case was not complex and therefore, there is no reason to deviate from what courts in this district have previously set as a reasonable hourly rate for attorneys and paralegals.  Defendants

48

also claim that Mr. Deep is only entitled to recover $150.00 rather than $275.00 per hour as plaintiff has failed to establish the need for second trial attorney and further, there is no evidence of Mr. Deep's experience.

The Second Circuit has held that courts are to award the presumptively reasonable fee, that is, the fee that would be paid by a reasonable, paying client in the relevant community. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191-93 (2d Cir. 2008). "The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'". *Luciano,* 109 F.3d at 115 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984)). "It is well-established that the 'prevailing community' the district court should consider is 'the district in which the court sits'". *Id.* (citing *Polk v. New York State Dep't of Corr. Servs*., 722 F.2d 23, 25 (2d Cir. 1983)). Courts in the Northern District of New York have determined:

> . . . the reasonable hourly rates in this District, i.e., what a reasonable, paying client would be willing to pay, were $210 per hour for an experienced attorney, $150 per hour for an attorney with four or more years experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals.

*Picinich v. United Parcel Serv.*, 2008 WL 1766746, at *2 (N.D.N.Y. 2008) (citing, *inter alia, New Paltz Cent. Sch. Dist. v. St. Pierre*, 2007 WL 655603, at *2 (N.D.N.Y. 2007)).

In the *Lee*, *Lore* and *Bergerson* cases, the plaintiffs, all of whom were represented by Ms. Bosman, moved for an award of attorneys' fees. In those cases, Ms. Bosman made the same application for hourly rates. Judge Hurd declined to award Ms. Bosman the requested rate of $275.00 per hour for legal services and awarded fees at an hourly rate of $210 for experienced attorneys, $150 for attorneys with more than four years experience, and $80 for paralegals. The

49

Court also reduced travel time by one-half the hourly rate. *Lee*, 2010 WL 2834910 (N.D.N.Y. 2010); *Bergerson*, 2010 WL 610694 (N.D.N.Y. 2010); *Lore*, 2009 WL 2957784 (N.D.N.Y. 2009).

Here, the Court finds no reasonable basis to deviate from the generally accepted standard and awards fees based upon $210.00 per hour for Ms. Bosman's legal work and $105.00 per hour for Ms. Bosman's travel.   As previously discussed, plaintiff has not established that Mr. Deep's services were necessary or reasonable.  Moreover, the record contains no evidence with respect to Mr. Deep's experience.  Accordingly, the Court awards plaintiff attorney's fees at a rate of $150 per hour for Mr. Deep's legal work with $75 per hour for Mr. Deep's travel.  There is no reason to deviate from the standard rate of $80.00 per hour for paralegal work.

Prior to any reduction due to the degree of success, the hours reasonably expended are multiplied by the hourly rates[11]:

| Name | Service | Rate | Hours | Total |
|------|---------|------|-------|-------|
| Bosman | Legal | $210 | 341.78 | $71,773.80 |
| Bosman | Travel | $105 | 16 | $1,680.00 |
| Deep | Legal | $150 | 57 | $8,550.00 |
| Deep | Travel | $75 | 10 | $750.00 |
| Paralegal | Legal | $80 | 99 | $7,920.00 |
| Total | | | | $90,673.80 |

## C.    Adjustment for Degree of Success

Defendants seek a further reduction of plaintiff's counsel fees based upon plaintiff's

---

[11] Ms. Bosman's hours for legal services are calculated accordingly: 566.98 (hours sought) - 16 (travel hours) - 123.75 (paralegal hours) = 427.23.  427.23 - 20% = 341.78 hours.  Mr. Deep's hours for legal services are calculated: 95 - 40% = 57 hours.  Paralegal hours are calculated: 123.75 - 20% = 99 hours.

limited success.  Defendants claim that plaintiff's successful retaliation claim was not intrinsically

intertwined with plaintiff's unsuccessful claims.  Defendants also assert that plaintiff, "was only

10% successful in her lawsuit".  Accordingly, defendants argue that the court should reduce all

hours for attorney and paralegal work, excluding trial preparation and trial, by 90%.

If a plaintiff has achieved only partial or limited success, the product of hours reasonably

expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  In *Hensley*, the Supreme Court held:

> [T]he extent of a plaintiff's success is a crucial factor in determining
> the proper amount of an award of attorney's fees under 42 U.S.C. §
> 1988. Where the plaintiff has failed to prevail on a claim that is
> distinct in all respects from his successful claims, the hours spent on
> the unsuccessful claim should be excluded in considering the amount
> of a reasonable fee. Where a lawsuit consists of related claims, a
> plaintiff who has won substantial relief should not have his attorney's
> fee reduced simply because the district court did not adopt each
> contention raised. But where the plaintiff achieved only limited
> success, the district court should award only that amount of fees that
> is reasonable in relation to the results obtained.

*Id.* at 439.

When a plaintiff's claims for relief "involve a common core of facts or [are] based on

related legal theories," the "lawsuit cannot be viewed as a series of discrete claims."  *Dominic v.*

*Consol. Edison Co. of New York, Inc.*, 822 F.2d 1249, 1259 (2d Cir. 1987) (citing *Hensley*, 461

U.S. at 435).  District courts have regularly found that unsuccessful sexual harassment

discrimination claims are sufficiently related to retaliation claims to warrant inclusion of time

spent on both claims in awarding attorneys fees.  *Parrish*, 280 F.Supp.2d at 172 (collecting

cases).  In *Dominic*, the Second Circuit held that the factual and legal theories underlying the

plaintiff's age discrimination claim were inextricably intertwined with those underlying his

51

retaliatory discharge claim.  *Id*. at 1260.  The Court held,

> The basic issues at trial were substantially intertwined. Thus, the facts that underlie Dominic's claim of age discrimination, e.g., his demotion, were used by Con Edison to show its prior dissatisfaction with his work performance in rebutting the retaliation claim. Moreover, although the merits of Dominic's retaliation claim did not depend on the validity of his complaints of age discrimination, there is authority that Dominic could recover on his retaliation claim only if his complaints of age discrimination had a reasonable foundation.

*Id*. (internal citations omitted); *see also Khan*, 2009 WL 2259643, at *1 (holding that the plaintiff's claims arose out of his troubled employment relationship and witnesses at trial gave testimony relevant to both successful and unsuccessful claims, therefore, there was no "workable way" to divide the hours).

Here, plaintiff initially plead six causes of action including gender and racial discrimination in violation of Title VII, claims of hostile work environment and retaliation in violation of Title VII, violations of § 1981 and § 1983 and violations of NYHRL.  Plaintiff alleged that she was subjected to numerous acts of retaliation including:  (1) heightened criticism of her performance including excessive reprimands/discipline; (2) unfair treatment by her co-workers; (3) eavesdropping on her telephone conversations; (4) disparately assigning plaintiff road duty; and (5) intimidation by instigation of criminal prosecution including reporting plaintiff to Internal Affairs.  Plaintiff commenced her action against The City of Syracuse; The City of Syracuse Police Department; Former Chief of Police Dennis Duval; Sergeant Timothy Gay; Mark McArdle; Patrick Harrington and Michael Rathbun.  The majority of plaintiff's claims were dismissed on summary judgment and after motion practice, the only remaining defendants were the City of Syracuse, McArdle and Gay.  The only issues presented at trial were: (1) whether the City of Syracuse violated Title VII and the Human Rights Law when they eavesdropped on

plaintiff's telephone conversations; (2) whether Gay and McArdle violated NYHRL when they eavesdropped on plaintiff's telephone conversations; and (3) whether Gay and McArdle discriminated against plaintiff based upon her race in violation of § 1981.

The jury returned a verdict in favor of plaintiff finding that defendants retaliated against plaintiff after she complained about pornography in the workplace.  Witnesses for both plaintiff and the defense provided testimony with regard to pornography, the City's response to the presence of pornographic material in the workplace and plaintiff's complaints about pornography. Thus, the jury heard evidence that related to both the successful retaliation claim and the unsuccessful gender discrimination and hostile work environment claims.

Counsel's billing records do not distinguish between the various causes of action.  Entries including interviews with witnesses, discussions with counsel and preparation for trial all involved the case, as a whole.  Accordingly, it would be impossible to determine which entries applied to which claims.

Based upon the caselaw and record, the Court finds that plaintiff's successful and unsuccessful claims were "inexplicably intertwined" and "involved a common core of facts or related legal theories".  Thus, a reduction on this basis alone, is not warranted.  *See Iannone v. Frederic R. Harris, Inc*., 1997 WL 12809, at *2 (S.D.N.Y. 1997) (the plaintiff's gender discrimination claim was dismissed on summary judgment and at trial, she prevailed on her retaliation claims but not her sexual harassment claim).

However, the court cannot end its inquiry there.  In cases with a "single claim" or "a common core of facts", the most critical factor is the "degree of success obtained".  *Hensley,* 461 U.S. at 436; *see also Dominic*, 822 F.2d at 1259 ("the district court 'should focus on the

significance of the overall relief obtained by the plaintiff in relation to the hours reasonably

expended on the litigation'"). In *Farrar v. Hobby*, 506 U.S. 103, 114 (1992), the Supreme Court

addressed the "degree of success" in a case where the jury awarded on $1 in nominal damages.

The Court reasoned, "[w]here recovery of private damages is the purpose of . . . civil rights

litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount

of damages awarded as compared to the amount sought." *Id*. at 114. The Second Circuit

discussed the *Hensley* and *Farrar* holdings and concluded:

> Our circuit has thus clearly adopted the view, notwithstanding any
> potential question as to the scope of *Hensley* and *Farrar,* that a district
> judge's authority to reduce the fee awarded to a prevailing plaintiff
> below the lodestar by reason of the plaintiff's "partial or limited
> success" is not restricted either to cases of multiple discrete theories
> or to cases in which the plaintiff won only a nominal or technical
> victory.

*Kassim v. City of Schenectady*, 415 F.3d 246, 256 (2d Cir. 2004).

In *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004), the district court reduced the plaintiff's

overall fee awarded by twenty percent to account for the plaintiff's, "purs[uit] [of] inflated claims

. . . to the eve of trial". On appeal, the plaintiff argued that the district court abused its discretion

by weighing withdrawn claims when determining the appropriate fee. The Second Circuit

disagreed and reasoned that, "the District Court had discretion to take into account the fact that

plaintiff pled 'an overbroad case that he had no realistic expectation of ultimately proving' in

measuring the plaintiff's degree of success and adjusting the lodestar to award a reasonable fee".

*Id*. at 100.

In determining the degree of success obtained, this Court is "obligated to give primary

consideration to the amount of damages awarded as compared to the amount sought." *Willis v.*

54

*Onondaga County Sheriff's Dep't*, 2010 WL 3338819, at *3 (N.D.N.Y. 2010) (citing *Farrar*, 506 U.S. at 114 (internal quotations and citation omitted)).  The Court must determine whether plaintiff's unsuccessful litigation of the majority of her claims caused counsel to spend more time than they otherwise would have.  *See Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F.Supp.2d 395, 401 (E.D.N.Y. 2010).

In *Khan*, the plaintiff sought $147,830.00 in attorneys' fees.  The plaintiff was successful on one of the four claims presented to the jury.  *Khan*, 2009 WL 2259643, at *3.  To determine the degree of success, the court examined the "relative importance" of the plaintiff's claims and concluded that the Title VII retaliation claim was not the plaintiff's most important cause of action.  *Id*.  Rather, the plaintiff's hostile work environment claims related to conduct that was arguably more serious and had the potential of generating more significant relief in lost wages and compensatory damages.  *Id*.  The court held that the successful and unsuccessful claims were intertwined, but nonetheless concluded that a fee reduction was warranted as, "plaintiff's overall degree of success is sufficiently low".  *Id*.  The court noted that the plaintiff achieved substantial relief, even after remittitur, with an award of $50,159.91 in total damages.  *Khan*, 2009 WL 2259643, at *3.  Weighing all factors, the Court awarded plaintiff $50,000 in attorneys' fees, inclusive of costs, which represented a reduction of roughly two-thirds.  *Id*.

In *Lee,* after motion practice, only six of the plaintiff's original eighteen causes of action survived summary judgment.  Moreover, twelve of the originally named defendants were awarded summary judgment, leaving only two defendants for trial.  At trial, the only issues presented to the jury were the plaintiff's retaliation claims, ADA claims and First Amendment 1983 claims.  Judge Hurd concluded:

55

> The plaintiff was not successful on many of her claims, or against any of the individually and officially named defendants, but did achieve substantial success against the defendant City of Syracuse. The attorney's fees claims are reduced by 20%.

Similarly, in *Lore*, Judge Hurd held that the plaintiff was not successful against eight of the nine original defendants but achieved substantial success against the remaining defendant. Therefore, the attorneys' fees were reduced by 30%. *Lore*, 2009 WL 2957784, at *2.

Here, plaintiff's degree of success was significantly modest in comparison with her original complaint and monetary request for damages. Plaintiff's original complaint alleged six different causes of action and involved claims for compensatory and punitive damages. Plaintiff alleged that she was subjected to at least five difference acts of retaliation. The majority of plaintiff's claims were dismissed on summary judgment. Further, after motion practice, four of the seven original defendants were dismissed from the case. As discussed, plaintiff was unable to present sufficient proof to overcome defendants' motion for summary judgment on the majority of her claims. During the course of the trial, plaintiff attempted to present evidence that would justify an award of punitive damages. However, at the close of plaintiff's case, the Court granted defendants' motion for a directed verdict and dismissed plaintiff's § 1981 allegations of racial discrimination, removing the issue of punitive damages from the jury's consideration. *See Lewis v. Triborough Bridge and Tunnel Auth.*, 2001 WL 1898318, at *5-6 (S.D.N.Y. 2001) (the plaintiffs sought punitive damages until the day of trial and the court's ruling on the unavailability of punitive damages as a matter of law demonstrated plaintiff's limited success).

Furthermore, during summation, plaintiff's counsel asked the jury to return a verdict for $1,000,000.00. Plaintiff prevailed on only one of seven claims of retaliation, which, when compared to plaintiff's original complaint, was far less than what she sought. Further, the jury

awarded $450,000.00, less than half of what plaintiff requested on summation. *Id.* (holding that the plaintiffs were only partially successful as they asked the for $600,000 in compensatory damages and additional back pay but were only awarded $250,000 in compensatory damages). Plaintiff's success was clearly limited in comparison with the relief she originally sought.

Plaintiff's recovery of compensatory damages entails limited success, despite the amount of the jury's award. Based upon plaintiff's degree of success, a further fifty percent reduction of the attorneys' fees calculated above is warranted. Accordingly, the Court awards plaintiff $45,336.90 for attorneys' fees.

**D.   Costs**

Plaintiff seeks reimbursement for costs and expenses in the amount of $5,331.38. Defendants object arguing that: (1) plaintiff has not produced any receipts to support the expenses; (2) Section 1920 does not recognize travel expenses (including mileage, tolls, parking), postage, service fees for serving the summons and facsimile expenses; (3) plaintiff's copying costs are excessive with no explanation given for the work; and (4) plaintiff listed the $150 filing fee for the complaint twice. Accordingly, defendants seek to reduce plaintiff's costs by 90% to reflect plaintiff's level of success and further, request that the court deny plaintiff's requests until such time that she produces receipts.

Plaintiff seeks costs pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. 2000e-5(k). Fed.R.Civ.P. 54(d) provides, in pertinent part:

> Costs Other Than Attorneys' Fees. Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.

The costs that a party may recover under 54(d) are strictly limited to those listed in 28

U.S.C. § 1920.  *Manzo*, 2010 WL 1930237, at *10 (citations omitted).   Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

However, plaintiff has moved for costs pursuant to § 2000e-5(k), which provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Expenses recoverable under Title VII are not limited to the costs taxable by 28 U.S.C. § 1920.  *See Disney Enter., Inc. v. Merchant*, 2007 WL 1101110, at *9 (N.D.N.Y. 2007) (holding that delivery charges and postage are not typically recoverable under § 1920 but are recoverable under other fee shifting statutes).   Out-of-pocket costs that are normally charged to clients are generally compensable in Title VII cases, even when such disbursements fall outside of 28 U.S.C. § 1920.  *Cover*, 2008 WL 4093043, at *8 (citation omitted); *see also Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *12 (S.D.N.Y. 2010).

Here, defendants misapprehend the aforementioned statutes.  Section 2000e-5(k) allows plaintiff to recover most of the costs ordinarily incurred in litigating a case, regardless of whether they are recoverable under § 1920.  *Manzo*, 2010 WL 1930237, at *10-11.  Accordingly, costs

associated with mailings, photocopies, subpoena/witness fees, printing, messenger services, filing

fees and court fees are compensable. *See Reiter*, 2007 WL 2775144, at *21-22.   The court has

reviewed the invoices and expenses and finds that the costs are not excessive for a case of this

length and complexity. *See Manzo*, 2010 WL 1930237, at *11 (while more documentation would

be preferable, the costs appeared reasonable despite the absence of full documentation).

However, the court will reduce the costs by the same percentage as the fee award to reflect

plaintiff's limited success. *See Kim v. Dial Service Inter'l Inc.,* 1997 WL 458783, at *20

(S.D.N.Y. 1997).  Accordingly, plaintiff is entitled to costs in the amount of $2,665.69.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that defendants' motion for judgment as a matter of law pursuant to Fed. R.

Civ. P. 50(b) (Dkt. No. 122) is **DENIED**; and it is further

**ORDERED** that defendants' motion for a new trial pursuant to Fed. R. Civ. P. 59(a) (Dkt.

No. 122) is **DENIED**; and it is further

**ORDERED** that defendants' motion for remittitur pursuant to Fed. R. Civ. P. 59(e) (Dkt.

No. 122) is **GRANTED**.  Plaintiff shall file with the clerk of the court, within 30 days of the

within order, an acceptance of compensatory damages for emotional distress to the amount of

$50,000.00.  In the event that the plaintiff does not file an acceptance, a new trial solely on the

issue of compensatory damages for emotional distress will commence on a date to be set by the

Court.  If plaintiff consents to the remittitur, the Clerk is directed to enter amended judgment in

favor of plaintiff against defendants in the total sum of $50,000.00; and it is further

**ORDERED** that defendants' motion for to stay the enforcement of judgment pursuant to

Fed. R. Civ. P. 62(d) (Dkt. No. 122) is **GRANTED** upon defendants posting a supersedeas bond as directed herein; and it is further

ORDERED that plaintiff's motion for attorneys' fees and costs (Dkt. No. 118) is **GRANTED** in the amount of $48,002.59.

**IT IS SO ORDERED.**

Date:  March 2, 2011

_____
Norman A. Mordue
Chief United States District Court Judge